**GLEN GILBERT CONSTRUCTION COMPANY, INC., Appellant,**

v.

**John GARVISH and Gloria Garvish, et al., Appellees.**

**No. 1–381–A–96.**

Court of Appeals of Indiana, First District.

March 18, 1982.

Rehearing Denied April 22, 1982.

James E. Ayers, Robert F. Wernle, Wernle, Ristine & Ayers, Crawfordsville, for appellant.

James S. Kowalik, Hopper & Opperman, Indianapolis, Don C. Schmidt, James Collier, James R. Earnshaw, Harding & Henthorn, Crawfordsville, for appellees.

ROBERTSON, Judge.

Glen Gilbert Construction Company (Glen Gilbert) appeals a judgment rendered in favor of Dr. and Mrs. John Garvish in an action brought to foreclose a mechanic's lien and for damages. The trial court held that Glen Gilbert should take nothing by way of its complaint and also that Dr. and Mrs. Garvish should take nothing by way of their counterclaim against Glen Gilbert.

We affirm.

In September, 1978, Dr. and Mrs. John Garvish contracted with the Glen Gilbert Construction Company for the construction of a house in Crawfordsville, Indiana. Glen G. Smith represented the construction company in all of its negotiations with the Garvishs. The signed contract read in part as follows:

"THIS AGREEMENT, made and executed by and between Dr. John Garvish, hereinafter called the Owner, and Glen Gilbert Construction Co. Inc. hereinafter called the Contractor.

Witnesseth; The Contractor agrees to build a two-story house for the Owner at Lots 48 and 49 in Twin Oaks subdivision, Crawfordsville, Indiana. The total contract price shall be Two-Hundred Twenty-eight Thousand and Seven-Hundred Dollars ($228,700.00), with all detailed cost allowances to be specifically shown in an attached contract addendum.

The Contractor agrees to furnish all necessary labor and materials for this project, including all interior and exterior painting, built in a good and workmanlike manner, per attached plans and specifications, as drawn by Akers & Associates, 8–23–78.

The Owner agrees to the following:

1.  Pay a 1% deposit prior to the start of construction, which is included in the above contract price.

2.  Pay the Contractor construction draws as requested, and the Contractor in turn shall furnish the Owner with a copy of all suppliers and subcontractors invoices so that he may verify that they are being paid regularly.

3.  At two-week intervals the Owner shall pay the Contractor .165% of all labor and material expenses paid in the prior two weeks, including subcontract costs, to cover his cost of supervision, overhead, travel, and other expenses.

4.  Any changes or alterations which add to the total contract price shall be billed to the Owner at a net cost plus 15% overhead factor.

5.  The final balance due the Contractor, under this agreement, shall be determined by deducting all payments made to date, plus the initial deposit, from the above total contract price, including any extra-cost items incurred.

There is some dispute as to whether the above contract is a contract for services at a set price or a "cost-plus" contract with a maximum total price. Both the contractor and Dr. Garvish testified that the total contract price of two hundred twenty-eight thousand seven hundred dollars ($228,-700.00) included the contractor's commission of 16.5% and was based on specific cost estimates arrived at prior to signing the contract.

Construction continued until April, 1979, when Dr. Garvish and the contractor disagreed over the handling of a subcontractor's payment. Garvish told the contractor that he had breached the contract and that if he continued working on the project, he should consider himself a "volunteer". Garvish assumed control of the accounting and payments and thereafter made all subcontractors' and suppliers' payments directly. The contractor, in the person of Glen Smith, continued working on the project until September, 1979, when Garvish directed the contractor to cease all work on the site and not to return.

At the time of his explusion from the job, according to the contractor, he had received a total of twenty-seven thousand one hundred fifty-seven dollars ($27,157.00). According to Garvish, a total of twenty-nine thousand three hundred sixty-seven dollars and seventy-seven cents ($29,367.77) had been paid to the contractor. On September 20, 1979, subsequent to his exclusion from the site, the contractor filed his notice of a mechanic's lien and on September 27, 1979, filed his complaint to foreclose the mechanic's lien and for damages.

Both parties present several interrelated issues for review by this court. However, there are essentially only two questions to be examined and they are as follows:

(1) Whether the trial court erred as a matter of law in finding rescission of the contract and failing to award damages.

(2) Whether the contractor was fully compensated for the work he performed.

The present case involves review of a negative judgment, that is, review of a judgment rendered against the party having the burden of proof below. In reviewing a negative judgment this court abstains from reweighing the evidence and resolving credibility issues. We consider only that evidence favorable to the appellee and all reasonable inferences drawn therefrom. *State v. Boyle*, (1976) 168 Ind.App. 643, 344 N.E.2d 302. A judgment will be set aside only where the evidence inexorably leads to but one conclusion and the trier of fact has reached a contrary conclusion.

The trial court found that Dr. and Mrs. Garvish had breached the contract by preventing the contractor from continuing performance. The contractor argues that the wrongful party cannot rescind a contract and since there was no rescission by the contractor, both parties remained obligated to perform. This argument fails in light of present case law. In *Lindenborg v. M & L Builders and Brokers Inc.*, (1973) 158 Ind. App. 311, 302 N.E.2d 816, the owners brought an action against the contractor for rescission of a construction contract and special damages. This court held that the mutual requisite consent to rescission may be evidenced by the acts of the parties as well as by express agreement. In addition, the court went on to state that even the party without the right to rescind may do so if the other party agrees to rescission or fails to object, thereby permitting rescission to occur. Such rescission is held to be by mutual consent.

The evidence shows that in April, 1979, Dr. Garvish and the contractor had a disagreement over the handling of a certain subcontractor payment. Subsequently, Dr. Garvish took over the contractor's duties and told the contractor that if he continued working, he should consider himself a "volunteer". At this point, the contractor failed to respond, either by objecting or seeking modification or termination of the contract. According to *Lindenborg, supra*, the contractor had a duty to respond in some fashion. Having failed to do so, he permitted rescission of the contract by mutual consent. Therefore, the trial court did not err in finding rescission of the contract thereby discharging the parties' rights and duties.

It is evident that when a contract is rescinded no action can be maintained for breach of contract. *Church v. Bobbs-Merrill Co.* (7th Cir. 1959) 272 F.2d 212. The function of a contract rescission is to restore the parties to their precontract position, that is the *status quo ante*. *American Standard Ins. Co. v. Dorham*, (1980) Ind. App., 403 N.E.2d 879. Thus, the trial court did not err in failing to award damages to the contractor.

The contractor also argues that he was not fully compensated for his work. He maintains that he should receive the commission payment agreed to prior to the start of construction. The evidence differs as to the amount that each party believed would be paid to the contractor as commission. According to the contractor, the amount was to be thirty nine thousand seven hundred ninety-five dollars ($39,795.00). According to Dr. Garvish, the amount totalled thirty two thousand dollars ($32,000). However, the exact amount is irrelevant in light of the fact that the contract was rescinded prior to the completion of construction. In either case, the contractor would not be entitled to full payment.

The contract provided that at two week intervals, Dr. Garvish would pay the contractor a percentage (.165%) of all expenses paid by the contractor in the prior two weeks. There is conflicting evidence as to the exact amount that had been paid to the contractor at the time of his expulsion from the job. According to the contractor, he had received a total of twenty-seven thousand one hundred fifty-seven dollars ($27,157.00). According to Dr. Garvish, the sum was twenty-nine thousand three hundred sixty-seven dollars and seventy-seven cents ($29,367.77). As stated earlier, this court does not reweigh the evidence nor resolve issues of witnesses' credibility. The evidence shows that the contractor was paid at regular intervals prior to the time when the contract was rescinded. At that point, the

parties' rights and obligations under the contract were terminated. *Lindenborg v. M & L Builders & Brokers, Inc., supra.* Thus, the trial court did not err in finding that the contractor had been fully compensated for his performance.

Judgment affirmed.

NEAL, J., concurs.

RATLIFF, P. J., concurs in result.