**BENEFIT TRUST LIFE INSURANCE COMPANY, Appellant (Defendant Below),**

v.

**Talmadge WAGGONER, Appellee (Plaintiff Below).**

No. 1–484A97.

Court of Appeals of Indiana, First District.

Jan. 29, 1985.

Bruce A. Hewetson, Donovan, Emery & Hewetson, Bedford, for appellant.

John M. Plummer, Jr., Bedford, for appellee.

ROBERTSON, Judge.

Benefit Trust Life Insurance Company, defendant-appellant, appeals the trial court's judgment granting Talmadge Waggoner disability benefits pursuant to a group long-term disability insurance contract that Benefit Trust had with his employer.

Benefit Trust raises three issues on appeal: 1) that the trial court erred by denying its motions for judgment on the evidence because Waggoner failed to prove he was disabled; 2) that Waggoner failed to satisfy a condition precedent in the insurance contract because he was not under the care and treatment of a doctor who is licensed to practice in his locality; 3) that it is entitled to set off Social Security benefits against the insurance benefits, even if the Social Security benefits were not actually paid to Waggoner, with the net result that Waggoner is not entitled to any insurance proceeds.

Benefit Trust made two motions for judgment on the evidence, one at the close of the plaintiff's case and another at the close of all the evidence. The trial court denied both motions in its judgment entry.

This case was tried to the court and the trial court made specific findings of fact and conclusions of law. A motion for judgment on the evidence pursuant to Ind. Rules of Procedure, Trial Rule 50 is improper at a bench trial. A T.R. 50 motion addresses the question of whether there is sufficient evidence to justify submitting the case to a jury. *United Farm Bureau Mut. Ins. Co. v. Wampler,* (1980) Ind.App., 406 N.E.2d 1195. When trial is to the court, the defendant can test the sufficiency of the plaintiff's evidence by moving for dismissal pursuant to Trial Rule 41(B).

*United Farm Bureau Mut. Ins. Co., supra.* Treating Benefit Trust's motions as motions for dismissal, any error made in overruling the first motion has been waived by Benefit Trust's presentation of evidence. *United Farm Bureau Mut. Ins. Co., supra.* Given the recent amendments to T.R. 41(B), the second motion amounted to no more than a request for judgment in the defendant's favor. Pursuant to T.R. 41(B) as amended January 1, 1982, the trial court as the trier of fact can weigh the evidence, determine the credibility of witnesses and decide which party has sustained his burden of proof in ruling on a motion for involuntary dismissal. Comments by Indiana Supreme Court Committee on Rules of Practice and Procedure, 3 W. HARVEY, INDIANA PRACTICE, 1984 supp. at p. 30 *et seq.* When the trial court rules on a motion for dismissal after all the evidence has been presented, it is simply entering judgment at the conclusion of trial to the court. Indeed T.R. 41(B) addresses the usual findings of fact required by T.R. 52(A).

Therefore, in reviewing the trial court's decision in the case at bar, we cannot reverse its judgment unless it is clearly erroneous. T.R. 52(A). We construe the trial court's findings liberally in support of the judgment and we will only find them to be clearly erroneous when after reviewing the entire record, we are convinced a mistake has been made. *National Fleet Supply, Inc. v. Fairchild,* (1983) Ind.App., 450 N.E.2d 1015. We do not reweigh the evidence or judge the credibility of witnesses, instead we examine the evidence favorable to the judgment and all reasonable inferences which can be drawn from it. *Litzelswope v. Mitchell,* (1983) Ind.App., 451 N.E.2d 366.

The trial court made the following findings of fact and conclusions of law:

## "SPECIAL FINDINGS OF FACT

"1. That the plaintiff is a resident of Lawrence County, Indiana, and was employed by the Extruded Alloys Corporation, a subsidiary of the International Steel Company.

"2. That the defendant is a foreign mutual legal reserve company, liscensed (sic) to do business in the State of Indiana, that provides Group Long Term Disability Coverage for some of the employees of the International Steel Company and its subsidiaries.

"3. That the plaintiff has performed all conditions of the Contract to be performed on his part, including the proper and timely filing of Proof of Loss, timely filing of legal action and making proper Social Security disability claim.

"4. That the plaintiff was injured during the course of his employment on or about September 15, 1975, and received disability benefits under the terms of the Contract from defendant for approximately two years in the total sum of $6,102.67.

"5. That the plaintiff was covered under the defendant's Group Insurance Certificate, Contract 6270, Certificate Number 36067.

"6. That the defendant stopped its disability benefit payments to the plaintiff on or about March 29, 1978.

"7. That the plaintiff has been and is being damaged as a result of defendant's non-payment of the benefits; that the damages suffered by plaintiff through Oct. 16, 1983, are $27,933.15; that additional damages from Oct. 16, 1983, through Nov. 16, 1983, are $374.02; and that damages will continue to accrue at the rate of $507.22 each month thereafter during the lifetime of plaintiff, so long as he is totally disabled.

"8. That if plaintiff had received Social Security benefits as a result of a disability beginning Sept. 15, 1975, plaintiff would not be entitled to recover damages from defendant.

"9. That payments made by Workmen's Compensation Insurance was 400 weeks at $60 per week for 80% permanent/partial impairment to the man as a whole.

"10. That a pamphlet entitled "Long Term Disability Income Protection" was prepared by Benefit Trust Life or International

Steel Company for the benefit of Benefit Trust Life.

"11. That the defendant, by and through its employees, attorneys and agents, drafted the language of the contract which is the subject of this action, and that plaintiff did not participate in the drafting of the same. That the contract is a printed form contract.

"12. That plaintiff was under the care of and received treatment from Richard A. Rak, M.D., intermittently from Oct. 6, 1975 until Sept. 14, 1983; that he received hospital care; that he was prescribed pain control drugs and a back brace; that he was given physical therapy and prescribed exercises, and that he was examined, tested and advised over said period of time by the said Dr. Rak; and that plaintiff is still under the care and treatment of the said Richard A. Rak, M.D. within the meaning of the contract.

"13. That the contract defines "total disability" for the purpose of this claim as the "inability of the Insured to perform any of the duties pertaining to each and every business, profession or occupation for which he is reasonably qualified by reason of education, training and experience.

"14. That the plaintiff is unable to perform any of the duties pertaining to each and every business, profession or occupation for which he is reasonably qualified by reason of education, training and experience.

"15. That the plaintiff is unemployable.

"16. That the plaintiff's disability is an apparent lifelong disability, and his condition is unlikely to improve.

"17. That plaintiff's pain increases after periods of activity and the plaintiff must recline in order to relieve the pain.

"18. That Alan Somers, M.D. and Judy Rogers, each saw plaintiff on only one occasion in Oct., 1983, and that neither of them considered plaintiff's history of reclining and bed rest after periods of activity in the formation of expression of their opinions herein.

"19. That plaintiff filed two claims and one request for reconsideration with the Social Security Administration; that the claims and request for reconsideration were denied by Social Security Administration; and that plaintiff filed no further appeals therefrom.

"20. That Dr. Rak consistently and repeatedly maintained and expressed his opinion that plaintiff was totally disabled, that he was unemployable and that his condition was permanent and would not improve.

"21. That the contract does not base disability payments upon a successful recovery under the Social Security Act, but only upon a proper claim being filed.

## "CONCLUSIONS OF LAW

"Accordingly, the court now legally concludes, as follows:

"1. That the plaintiff is "totally disabled" within the meaning of the contract, and has been since his injury on September 15, 1975.

"2. That the plaintiff has performed all conditions of the contract to be performed on his part.

"3. That the plaintiff is now and at all times involved herein has been "under the care and treatment of a Medical Doctor" within the meaning of the contract.

"4. That defendant waived any condition precedent of being under the care and treatment of a Medical Doctor by making disability payments to plaintiff for a two year period under the terms of the Contract.

"5. That the contract herein is a 'contract of adhesion' and all ambiguous terms and provisions contained therein should be interpreted and construed in favor of plaintiff and against defendant.

"6. That the following contractual terms are ambiguous in that they are subject to more than one reasonable interpretation: (a) 'Total disability'; (b) 'Inability of the Insured to perform any of the duties pertaining to each and every business, profes-

sion or occupation for which he is reasonably qualified by reason of education, training or experience'; (c) 'Under the care and treatment of a Medical Doctor'; (d) 'Amount paid or payable to the Insured'; and (e) 'Upon making proper claim therefor'.

"7. That the defendant breached the contract by terminating monthly disability payments to plaintiff on or about March 29, 1978.

"8. That the plaintiff has been damaged by reason of defendant's breach of said contract in the amount of $27,933.15 through Oct. 16, 1983, plus $734.02 for the month of Oct. 16, 1983 through Nov. 16, 1983. That benefits thereafter will continue to accrue to plaintiff during his period of total disability at the rate of $507.22 per month.

"9. That defendant should be ordered to perform the contract in the future by making monthly disability payments to plaintiff during his lifetime while he is totally disabled.

"10. That by a preponderance of the evidence plaintiff has met his burden of proof on each issue herein.

"11. That judgment should be for the plaintiff and against defendant.

"JUDGMENT ENTRY AND DECREE

"Accordingly, based upon said Findings of Fact and Conclusions of Law, the Court now finds for the plaintiff, Talmadge Waggoner, on his amended complaint, and against the defendant, Benefit Trust Life Insurance Company, and that plaintiff shall have and he is hereby granted judgment against the defendant in the sum of $28,037.17 to and through this date, November 16, 1983.

"IT IS FURTHER ORDERED ADJUDGED AND DECREED by the Court that defendant shall continue, in the future, specific performance of said contract disability payments by paying to plaintiff, during the period of his continuing total disability, monthly disability benefits in the sum of $507.22, or, in the alternative,

monthly disability benefits as may be provided for by the terms and conditions of contract; said future monthly benefits shall be computed and commence from November 17, 1983. Costs taxed to defendant.

"All of same which is ORDERED, ADJUDGED AND DECREED this 16th day of November, 1983."

At this point, it is useful to recall several rules of contract and insurance law that will be applicable to all the issues before us. An insurance contract is ambiguous if reasonably intelligent men, upon reading the contract, would honestly differ as to its meaning. *Barmet of Indiana v. Security Ins. Group,* (1981) Ind.App., 425 N.E.2d 201; *Northland Ins. Co. v. Crites,* (1981) Ind.App., 419 N.E.2d 164. Ambiguity does not exist simply because a controversy exists about an insurance contract's meaning. *Northland Ins. Co., supra.* However, when an insurance contract is found to be ambiguous, courts will adopt the construction most favorable to the insured. *Barmet, supra.* We also note Benefit Trust has stipulated that it drafted the contract without input from Waggoner and as an adhesion contract, particularly an insurance contract, any ambiguity in it must be resolved against Benefit Trust. *Freeman v. Commonwealth Life Ins. Co. of Louisville,* (1971) 149 Ind.App. 211, 271 N.E.2d 177.

■ Benefit Trust's first allegation of error concentrates on two points, the "subjective nature" of Waggoner's condition and the fact that Waggoner did not introduce evidence from a vocational expert to prove his disability. Benefit Trust points out what it considers to be discrepancies between the observations of Dr. Rak, Waggoner's doctor, and Waggoner's description of his condition. Dr. Rak stated his examinations and tests of Waggoner had not revealed any nerve damage or pressure on the nerves, a slipped disc for example, that was the cause of Waggoner's pain. He also stated that Waggoner's physical reactions, such as his freedom of movement and facial expressions, were not consistent

with his complaints of pain. Benefit Trust's physician made similar statements and concluded that Waggoner's back pain was "purely a subjective complaint" and that he could not find "any objective evidence of any disease". He also stated Waggoner could perform "most desk jobs". The insurance company's vocational expert testified Waggoner could perform some jobs.

In essence, Benefit Trust concludes Waggoner did not prove his right to benefits because his "subjective" complaint of back pain was insufficient to prove a medical disability and because the insurance contract requires more than medical evidence to satisfy its definition of disability; that is to say evidence of a vocational disability.

The relevant contract clause reads:

The term "total disability" is defined as follows:

(1) During the Elimination Period and the first twenty-four months thereafter, total disability for purposes of payment of benefits under the Contract means the inability of the Insured to perform any of the duties of his regular occupation or employment, and while he is not engaged in any occupation or employment for wage or profit.

(2) For a period of time subsequent to those expressed in the immediately preceding section (1), total disability for purposes of payment of benefits under the Contract means the inability of the Insured to perform any of the duties pertaining to each and every business, profession or occupation for which he is reasonably qualified by reason of education, training or experience.

Benefit Trust has ignored conflicting evidence and has only drawn inferences favorable to its viewpoint from the evidence. Dr. Rak diagnosed Waggoner's condition as "low back pain with left sciatica" and as "lumbar disc syndrome". The insurance company's doctor concurred in this diagnosis catagorizing the condition as "chronic lumbrosacral muscular strain with some radiating muscular pain in the left manstring muscle". Waggoner testified that if he

engaged in any activity for more than two hours, he felt pain and that if he persisted with the activity, he had to spend a day or two days in bed recuperating. Dr. Rak testified that Waggoner's condition had not changed during the eight years he had been examining him and that Waggoner was unlikely to improve. He considered the disability to be permanent. In regard to the "subjective" nature of Waggoner's pain, the insurance company's doctor testified an injury could be verified upon the patient's subjective complaint and that he had done so previously. In any case, neither doctor concludes Waggoner was free from pain simply because the tests did not reveal nerve damage. Dr. Rak stated he would not release Waggoner to work while he suffered pain. Additionally, Benefit Trust's vocational expert testified she would not expect employers to hire someone who had to rest and recline after two hours work.

Given this evidence, we do not find the trial court's conclusion that Waggoner is totally disabled within the meaning of the contract to be clearly erroneous.

Apart from any ambiguity in the contract concerning the term "total disability", there is sufficient evidence to support the conclusion that Waggoner was not reasonably able to perform any duties in any context because of his need for frequent rest.

■ Next, Benefit Trust argues Waggoner did not satisfy the following condition precedent pertaining to medical care.

No benefits will be payable under the Contract for any disability of the Insured: (1) during which time the Insured is not under the care and treatment of a medical doctor, other than the Insured, who is legally licensed to practice medicine in the locality where treatment is given.

Although evidence was introduced that Dr. Rak had examined Waggoner eleven times over an eight-year period from 1975 to 1983, Benefit Trust contends Waggoner was not under the care and treatment of a

physician as required by the contract. The insurance company emphasizes that Waggoner did not visit Dr. Rak between December, 1981, and September, 1983, and that Dr. Rak did not prescribe medication during this time.

Dr. Rak characterized his relationship with Waggoner as providing "intermittent care". He considered Waggoner to be his patient in relation to his fitness for work. During the visits that occurred after Waggoner's initial referral to Dr. Rak by his family doctor, Dr. Rak supervised Waggoner's admission to a hospital; he conducted medical tests, physical therapy and exercises; he prescribed back braces and pain control drugs. He counseled against surgery.

Benefit Trust seems to be arguing its policy requires continuous care and treatment or at least ongoing medication. However, Dr. Rak testified Waggoner's condition was permanent and unlikely to change in the future; thus no continuous care was necessary. The policy's condition appears to a limitation aimed at cutting off benefits to persons who are not injured severely enough to require a doctor's care. We agree with the trial court's finding that this provision is ambiguous because it is clearly susceptible to more than one reasonable interpretation. Many disabling injuries reach a state where continuous medical care is unnecessary. Absent more specific and restrictive language defining medical care, Waggoner could reasonably expect his disability to be covered.

Additionally, Benefit Trust paid benefits for the "Elimination Period" and the first twenty-four months thereafter, the period specified in subsection (1) of the "total disability" clause. Although the condition precedent requiring the insured to be under a doctor's care applies to subsection (1), Benefit Trust did not challenge the adequacy of medical care until Waggoner sought long-term benefits under subsection (2). By doing so, Benefit Trust waived any right to rely on a restrictive interpretation of the condition precedent. *Clark Mutual*

*Life Ins. Co. v. Lewis,* (1966) 139 Ind.App. 230, 217 N.E.2d 853.

■ Benefit Trust argues that even if Waggoner is disabled, he is not entitled to insurance benefits because Social Security disability benefits were "payable" to him and that under its policy's nonduplication of benefits clause, it is entitled to set off the amount of the Social Security benefits against the policy's benefits, with the net result that Waggoner would not be entitled to insurance benefits.

The nonduplication clause reads:

The monthly benefits otherwise provided under the Contract for any calendar month shall be reduced by any amount *paid or payable to the Insured upon making proper claim* therefor during the same calendar month from the following sources: (1) Full Social Security benefits provided under the Federal Social Security Act together with all amendments thereto; .... (emphasis added).

Benefit Trust asserts Waggoner failed to make a "proper claim" for Social Security benefits. The insurance company argues that if Waggoner was disabled under its policy, he was also disabled for purposes of Social Security benefits. Therefore, the company concludes Social Security benefits were "payable" to Waggoner and were not paid only because he failed to make a "proper claim".

Benefit Trust contends Waggoner did not make a serious effort to claim Social Security benefits. Waggoner made two claims and both were denied. He filed a request for reconsideration on one claim and it was denied. He did not request a hearing on either claim. Benefit Trust argues Waggoner waived his right to administrative and judicial review of his claim. The company concludes that when benefits are "payable" and can be set off even though they are not paid. Benefit Trust primarily relies on two cases to support its interpretation. *Callaway v. Nationwide Mutual Insurance Co.,* (1968) Del.Super., 248 A.2d 617 and *Neagle v. Connecticut*

*Blue Cross,* (1980) 36 Conn.Supp. 561, 420 A.2d 1169.

We perceive an important distinction between the facts in these cases and the case at bar. In *Callaway,* the plaintiff, an insured under a group medical policy, was injured in an automobile accident. His policy excluded from coverage any medical expenses to the extent benefits were "payable" under any other insurance policy. The plaintiff was entitled to receive medical payments under the driver's policy if he executed an agreement to apply these benefits to any recovery under the liability portion of the driver's policy. The plaintiff refused to execute the agreement and was not paid. The Delaware court held these benefits were "payable" to plaintiff in relation to the exclusionary clause of his policy although they were not actually paid. In *Neagle,* the plaintiff's medical policy excluded benefits for expenses which were "paid, payable or required to be provided" by a no-fault automobile insurance statute. 420 A.2d at 1170. Except for his failure to apply, the plaintiff would have been entitled to no-fault coverage. The Connecticut court held the no-fault benefits could be excluded from coverage even though they were not actually paid. In both cases, the plaintiffs would have actually been paid if they had followed the respective application procedures; there was no question of whether they were eligible for the payments involved.

In Waggoner's case, Social Security benefits would not necessarily have been paid to him if he had followed the appeal procedures. Benefit Trust assumes disability for Social Security purposes is determined by the same standard as a "total disability" determination under its policy. However, the policy does not state the same standard will be used. Therefore, the rationale that Social Security benefits were "payable" to Waggoner, but for his failure to appeal fails.

Likewise, Benefit Trust's interpretation of the term "proper claim" is not specifically included in the contract. The trial court concluded the term was ambiguous and construed it against the defendant. We cannot say this conclusion is clearly erroneous. Waggoner filed two claims and attempted to have a claim reconsidered. Absent restrictive contract language requiring him to pursue his claim through judicial review, it was reasonable for him to assume he had satisfied the policy's requirements.

For these reasons, the trial court's judgment is affirmed.

RATLIFF, P.J., and NEAL, J., concur.