V.F. HORINE, Sr., and Jean Horine, husband and wife, Appellants (Defendants Below),

v.

GREENCASTLE PRODUCTION CREDIT ASSOCIATION, Appellee (Plaintiff Below).

No. 4–1285A351.

Court of Appeals of Indiana, Fourth District.

March 26, 1987.
Rehearing Denied April 29, 1987.

Paul E. Brown, Indianapolis, Paul Kruse, Parr, Richey, Obremsky & Morton, Lebanon, for appellants.

James P. Buchanan, Buchanan & Buchanan, Lebanon, for appellee.

CONOVER, Presiding Judge.

Defendant-Appellant V.F. Horine and Jean Horine (the Horines) appeal the trial court's characterization of their action on a land contract as a rescission and the court's award of $137,370 to Plaintiff-Appellant Greencastle Production Credit Association (Greencastle).

We affirm.

ISSUES

The Horines present four issues for review. Restated and consolidated, they are,[1]

1. whether rescission of the contract is supported by the evidence, and

2. whether foreclosure was the proper remedy.

FACTS

In 1978, Gary L. and Mary Anne Watson (Watsons) purchased a farm on land contract from the Horines. The purchase price, $510,000, was to be paid in installments. The Watsons made a $120,000 down payment. Thereafter, the following schedule of payments was required by the contract:

| "DATE | BEGINNING PRINCIPAL BALANCE | AMOUNT OF PAYMENT | INTEREST | PRINCIPAL |
| --- | --- | --- | --- | --- |
| April 7, 1979 | $390,000.00 | $32,000.00 | $29,250.00 | $2,750.00 |
| April 7, 1980 | 387,250.00 | 32,000.00 | 29,044.00 | 2,956.00 |
| April 7, 1981 | 384,294.00 | 32,000.00 | 28,822.00 | 3,178.00 |
| April 7, 1982 | 381,116.00 | 42,000.00 | 32,395.00 | 9,605.00 |
| April 7, 1983 | 371,511.00 | –0– | 31,578.00 | –0– |

| DATE | BALLOON PAYMENT |
| --- | --- |
| April 7, 1981 | $413,116.00 |
| April 7, 1982 | 413,511.00 |
| April 7, 1983 | 403,089.00" |

(R. 61). From the date of the sale to April 7, 1981, interest was to be paid at a rate of 7½% per annum. The remainder of the payment period required an interest rate of 8½% per annum. The effect of the balloon payments in the schedule above was to give the vendees the option of paying off the total due before the end of the contract period, i.e., in 1981 or 1982 the vendees could pay the entire balance instead of the smaller installment payment. In any event, if the vendees allowed the contract to continue to its full term, a final payment of $403,089 had to be made on April 7, 1983, or the Watsons would be in default.

The Watsons did not make a balloon payment in 1981 or 1982 and chose merely to keep the contract current by making the respective installments. However, they failed to pay real estate taxes due for 1981 and 1982. On April 7, 1983, the Watsons defaulted. On April 30, 1983, the Horines notified the Watsons of their default and advised them they had 60 days in which to cure the default as provided in the contract. The Horines further advised the Watsons if default was not cured they would seek enforcement of the remedy provided in the escrow agreement executed contemporaneously with the contract.

That agreement provided an escrow agent was to hold two deeds, an executed warranty deed to the property in favor of the Watsons and a quitclaim deed in favor of the Horines. When and if the total purchase price was paid, the agent would deliver the warranty deed to the Watsons. If the Watsons defaulted, the quitclaim deed was to be delivered to the Horines. When the Watsons did in fact default the escrow agent delivered the quitclaim deed to the Horines. They recorded it on Sep-

---

1. The Horines have failed to support their final two arguments with any authority. Their entire argument for issue four is "the facts, law and argument relating to ISSUE IV have been fully developed in discussing ISSUES I, II, and III."

tember 1, 1983, because the default was never cured. On September 7, 1983, the Horines sued for possession.

Throughout the contract period the Watsons had borrowed heavily from Greencastle. It had taken a mortgage on the real estate as security. Furthermore, in 1978, the Watsons assigned all rights, title, equity and interest in the property to Greencastle as additional security. When the Watsons defaulted on the land contract they also defaulted on the payments required by the mortgage. Greencastle brought the present action in an effort to foreclose the mortgage it held on the property.

In Greencastle's action to foreclose its mortgage it named the Watsons and the Horines as defendants. The Horines filed a motion for summary judgment essentially asking the court to determine the extent of their interest in the property in relation to the Watsons and Greencastle. The trial court entered findings of fact and conclusions of law in favor of the Horines, determining they were entitled to possession of the property. The court found the property had been forfeited to the Horines, and foreclosure proceedings were not required. The court further found the value of the property was equal to the amount owed by the Watsons, thus, the Watsons had no equity in the property.

Greencastle, in its capacity as the assignor of the Watsons' interest in the property, appealed the granting of the Horines' motion for summary judgment.

On appeal, our First District, per Ratliff, J. affirmed the trial court's finding the Horines were entitled to possession of the property, but reversed the trial court's holding the property had been forfeited.

On remand, the trial court held the land contract between Horines and Watsons had been rescinded on September 1, 1983, by mutual assent pursuant to the terms of the land contract. The trial court further held Greencastle assumed all the rights of the Watsons under the contract, and they had paid $258,000 to the Horines prior to the rescission. From this sum, the court awarded the Horines the farm's reasonable rental value during the Watsons' occupancy thereof, and ordered the Horines to pay Greencastle $137,370 characterizing that sum as the rights and remedies left to the purchaser.

From this decision the Horines appeal.

## DISCUSSION AND DECISION

Before addressing the issues presented in this appeal, we note the First District's holding in *Greencastle Production Credit Association v. Horine and Watson* (December 6, 1984), No. 1–684 A 140, C–83–402, see table at (1984), Ind.App., 472 N.E.2d 1321, an unpublished memorandum opinion.[2] It contains the law of this case.

 Under the law of the case doctrine, an appellate court's determination of a legal issue is binding on both the trial court on remand and the appellate court on a subsequent appeal, given the same case and substantially the same facts. *Fair Share Organization v. Mitnick* (1964), 245 Ind. 324, 198 N.E.2d 765, *cert. denied* 379 U.S. 843, 85 S.Ct. 82, 13 L.Ed.2d 48; *Hinds v. McNair* (1980), Ind.App., 413 N.E.2d 586, 607. Prior appellate decisions are conclusive on all questions actually considered and determined in the first appeal. *Egbert v. Egbert* (1956), 235 Ind. 405, 132 N.E.2d 910; *Hinds, supra.*

The Horines claim the land contract was cancelled, not rescinded. In essence the Horines attack the trial court's findings of fact and conclusions of law.

On the subject of cancellation vis-a-vis rescission of the contract, Judge Ratliff said

While it can be inferred that the vendors intended to rescind the contract it could also be inferred that the vendors were simply seeking to enforce their contractual remedy. Under clause 8(B) of the contract, the vendors could, after a default, sue the vendee for the outstanding balance due. The vendors may have believed that the only means of obtaining satisfaction of the debt owed by the

---

**2.** Memorandum opinions may be cited as precedent "for the purpose of establishing ... the law of the case." Ind. Rules of Procedure, Appellate Rule 15(A)(3).

vendees was to retake possession of the land. Therefore, despite the uncontroverted nature of the vendors' actions, the vendors may have been seeking rescission of the contract or may have been seeking satisfaction under the contract. (*Memorandum Decision* at 7).

Thus, the law of the case has been set. On review, this court seeks only to determine whether there is sufficient evidence in the record to support the trial court's determination.

On appellate review, written findings of fact and conclusions of law will not be set aside unless they are clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A). In determining whether a trial court's findings are clearly erroneous, the court of appeals will not reweigh the evidence nor judge the credibility of witnesses. Instead, only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom are examined. If these are sufficient to support the trial court's findings, then the judgment must be sustained. *Benefit Trust Life Ins. Co. v. Waggoner* (1985), Ind.App., 473 N.E.2d 646.

The trial court held the parties agreed to rescind the contract. Rescission means the parties are restored to their former positions. The cancellation of a contract means that portion of the contract remaining unperformed is abrogated. The one refers to the state of things existing when the contract was made, the other to the state of things at the time of cancellation. *Mamula v. McCulloch* (1969), 79 Cal. Rptr. 571, 275 Cal.App.2d 184; *Manges v. Guerra, et al* (1981), Tex.Civ.App., 621 S.W.2d 652. The function of contract rescission is to return the parties to their pre-contract position, that is, the status quo. *American Standard Ins. Co. v. Durham* (1980), Ind.App., 403 N.E.2d 879, 881.

Rescission is a fact. The trial court looks to the course of conduct of the parties to determine if rescission occurred in fact. *Seanor v. McLaughlin* (1895) 165 Pa. 150, 30 A. 717, 719. Mutual consent to the rescission of a contract may be evidenced by the parties' actions as well as express agreement. *Economy Leasing Co. Ltd. v. Wood* (1981), Ind.App., 427 N.E.2d 483, 486. Here, the court found the parties mutually agreed to rescind the contract. First, the Watsons failed to make the payments required by the contract. Second, the Horines received the quitclaim and warranty deeds from the escrow agent. Third, the Horines took possession of the farm. Finally, the land contract did not contain a forfeiture clause. These facts constitute substantial evidence of probative value supporting the trial court's finding the contract was rescinded.

Next, the Horines contend foreclosure was Greencastle's proper remedy. In making this argument, the Horines rely upon *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641. In that case our Supreme Court held the forfeiture clause in a real estate contract was unenforceable because the buyers there had paid substantial sums of money to sellers. It said equity required the contract to be foreclosed, just as mortgages must be under the statutes applicable in such cases. *Skendzel*, 301 N.E.2d at 644–646.

Judge Ratliff held in the first appeal of this case

However, application of *Skendzel* is clearly restricted to cases where the land contract at issue contains a forfeiture clause entitling the vendor to retain the payments made prior to the vendee's default.

(*Memorandum Decision* at 6). The land sale clause here involved does not contain a forfeiture clause and the law of the case unequivocally states *Skendzel* is inapplicable to this situation. Under *Skendzel*, foreclosure is an equitable remedy employed to avert a forfeiture. Here, forfeiture is avoided because the contract was rescinded and the parties, thus, were returned to their positions just prior to its signing.

Next, the Horines contend the trial court erred by not awarding them money to compensate them for the decrease in the

land's value which occurred while the contract was in force. The object of the rescission is to return the parties to the status quo. *Glen Gilbert Const. Co., Inc. v. Garvish* (1982), Ind.App., 432 N.E.2d 455, 458. The exact or literal return to the status quo is not necessary. *Economy Leasing, supra,* 427 N.E.2d at 486. Under the trial court's order, the Horines received the property and the fair rental value of the land while the Watsons occupied it. Also, the trial court found the property had not been wasted by the Watsons while they were on the farm. This returned the Horines substantially to the status quo existing just prior to the contract's signing.

Finally, the Horines contend the court erred by not awarding them the fair rental value of the farm home during the Watsons' occupancy thereof. However, the Horines did not raise this issue until they filed their motion to correct errors. No evidence was presented at trial as to the fair rental value of the home even though the Horines called real estate experts to assess the value of the land. They could have testified as to the home's fair rental value but did not. A party may not raise an issue for the first time in his motion to correct errors or on appeal that was not duly raised before the trial court at the appropriate time. *Thompson v. Daviess-Martin County REMC* (1985), Ind.App., 486 N.E.2d 1102.

The trial court is in all things affirmed.

YOUNG and ROBERTSON, JJ., concur.