600 N.E.2d 143 (1992)
In re the Matter of the ADOPTION OF Baby Boy DZUROVCAK.
Prospective Adoptive Parents, Appellants-Petitioners,
v.
Terry Vaughan, Appellee-Respondent.
No. 56A05-9201-JV-15.
Court of Appeals of Indiana, Third District.
October 5, 1992.
Transfer Denied December 14, 1992.
Debra Lynch Dubovich, Goodman Ball & Van Bokkelen, P.C., Highland, for appellants-petitioners.
Gregory W. Brown, Brown & Brown, Merrillville, for appellee-respondent.
HOFFMAN, Judge.
Prospective adoptive parents appeal a decision which dismissed their petition to adopt Baby Boy Dzurovcak and awarded custody of the child to his natural father, Terry Vaughan. This appeal marks the second time that lower court proceedings in the cause have been reviewed. In an earlier decision, Matter of Adoption of Baby Boy Dzurovcak (1990), Ind. App., 556 N.E.2d 951, 952, Baker, J., concurring, this Court determined that Vaughan could not veto the adoption pursuant to IND. CODE § 31-3-1-6(a)(2) (1988 Ed.) inasmuch as he had not established paternity in a proceeding other than the adoption proceeding. In the opinion, this Court advised:
"If Vaughan can demonstrate that he established paternity in a proceeding other than the adoption proceeding prior to the granting of the adoption petition, he will have the power to veto the adoption. In that case, the circuit court, after hearing evidence as to the best interests of the child and the fitness of a custodial *144 person or persons, should make a custody determination."
Id.
Vaughan's petition to establish paternity was pending when the adoption court entered its order which gave rise to the initial appeal. The order of paternity by the juvenile court was entered while the appeal of the adoption court's original judgment denying the adoption was pending. After the decision by this Court, Vaughan presented the adoption court with the order by the juvenile court that established his paternity of the child. The adoption petition had not been granted at that point. Once paternity was established in a proceeding other than the adoption proceeding, Vaughan exercised his statutorily-authorized veto of the adoption. Because Vaughan did not consent to the adoption and because consent could not be implied pursuant to IND. CODE § 31-3-1-6.3 (1988 Ed.), the adoption petition was dismissed by the lower court.
The adoption court set the matter for a custody hearing. Pursuant to IND. CODE § 31-3-1-8(d) (1988 Ed.) [1992 redesignated I.C. 31-3-1-8(e) without change in text], "[i]f the court dismisses the [adoption] petition, the court shall determine the person who should have custody of the child." The prospective adoptive parents were not allowed to present evidence of the child's best interests at the hearing. Instead they filed an offer of proof with the court.
The custody hearing consisted of a colloquy between Vaughan's counsel, the natural mother's counsel, and the adoption court judge. The court acknowledged its ruling that the prospective adoptive parents were not parties to the custody proceeding. The court indicated that the paternity court also had jurisdiction to determine custody of the child based upon Vaughan's establishment of paternity. The court determined that the paternity court had greater resources to effectuate a custody order. Thus, the court determined that it would exercise jurisdiction for a period of six months and enter an order of only temporary custody.
Further, the court implicitly determined that custody would be proper in only the natural mother or natural father. Once the natural mother's counsel notified the court that the natural mother believed the best interests of the child would be served by placement with the prospective adoptive parents, the court entered an order granting temporary custody to Vaughan. The court and the attorney for the natural mother engaged in the following colloquy:
"THE COURT: ... I will grant joint custody, because I understand, Mr. Martinez, your client today has indicated to the court, and I want to check with you to see if it's right, that she doesn't want the custody of the child today.
MR. MARTINEZ: Your honor, let's, I just want to make sure we are absolutely clear for the record here. My client wants what's in the best interests of the child. After numerous long extended detailed conversations with my client 
* * * * * *
MR. MARTINEZ: She wants what's in the best interests of her child. She feels that the best interests of her child lay with the child being with the prospective adoptive parents. As such she wishes not to contest any custody issue at this time, and the court can make the appropriate ruling based on that basis.
THE COURT: All right. I'll grant the temporary custody to the father."
The court's written order of December 9, 1991, granted temporary custody of the child to Vaughan and provided for a six-month transitional period wherein the transfer of custody from the prospective adoptive parents to Vaughan would be accomplished.
Later in December, a hearing was held on the prospective adoptive parents' motion to stay the execution of the judgment pending appeal and upon Vaughan's petition for a rule to show cause. The stay was denied and Vaughan's petition was taken under advisement. The court ordered the child to temporarily become a ward of the state in *145 order to compel the Lake County Welfare Department to oversee the transfer of custody. The adoption court's order stated, in pertinent part:
"4. That whether or not it becomes necessary to file a formal petition pursuant to IC XX-X-X-XX [authorization to file petitions alleging child in need of services], the Lake County Department of Public Welfare shall supervise and implement this Court's Temporary Custody Order of December 9, 1991.
5. That the Probation Office or caseworker for the Lake County Department of Public Welfare who is assigned to this case shall contact this Court upon receipt of this Order and shall further keep this Court apprised of the progress of this case.
6. That pursuant to prior Orders of this Court, the Lake County Juvenile Court, under Special Judge James Clement, Cause No. 45D01-8902-JP-000382, should determine the permanent custody of the child herein and should further monitor this Court's Temporary Custody Order of December 9, 1991.
Subsequently, a motion for a stay made to this Court was granted in part. This appeal ensued.
The prospective adoptive parents raise two issues on appeal. As restated, the issues are:
(1) whether the adoption court erred in dismissing the adoption petition because Vaughan failed to properly establish paternity in a proceeding other than the adoption proceeding; and
(2) whether the adoption court erred in determining that the prospective adoptive parents were not proper parties to the custody hearing once the adoption petition was dismissed and by failing to conduct an evidentiary hearing on the best interests of the child.
Other sub-issues are subsumed into the above.
First, the prospective adoptive parents argue that the adoption court erred by dismissing the adoption petition based upon the establishment of Vaughan's paternity after the proceeding for the adoption had commenced. They argue not only that paternity must be established in a proceeding other than the adoption proceeding but that it must be established prior to commencement of the adoption action. They reason that the adoption court then has exclusive jurisdiction over the matters between the parties. Thus, the paternity order entered after the adoption proceeding was commenced is of no effect.
The statute requiring the consent of the natural father prior to the granting of the adoption, IND. CODE § 31-3-1-6, provides that paternity be established prior to the granting of the adoption petition, not prior to commencement of the adoption action. Further, statutorily and by common law, juvenile courts have exclusive original jurisdiction in proceedings to establish the paternity of a child.
IND. CODE § 31-6-2-1.1;

see also State for Vermont DSW v. Cargile (1989), Ind., 546 N.E.2d 301, 302.
Vaughan's action to establish paternity, filed in juvenile court within days of the commencement of the adoption proceedings, was not barred by the jurisdiction invoked by the court in the adoption action.
The prospective adoptive parents' arguments that the adoption court could determine paternity as an ancillary matter to the adoption and that a stipulation of paternity filed in the adoption court terminated any possible jurisdiction of the juvenile court are unavailing. Assuming arguendo that the adoption court could make such an ancillary determination, the adoption consent statute could not require a natural father to establish paternity in an action other than the adoption proceeding if no such action could be maintained once the adoption proceeding is instituted. The establishment of paternity in the juvenile court did not constitute a redetermination of paternity which would violate the proscription against the invocation of jurisdiction by more than one court.
Although no error occurred as to the establishment of paternity, the adoption court erred by purporting to invoke its *146 custody jurisdiction on only a temporary basis. As noted by the adoption court, both the adoption statutes and the paternity statutes provide for custody determinations. IND. CODE § 31-3-1-8 provides that "the court shall determine the person who should have custody of the child" once an adoption petition is dismissed. IND. CODE § 31-6-6.1-10 (1987 Supp.) states: "[u]pon finding that a man is the child's biological father, the court shall, in the initial determination, conduct a hearing to determine the issues of support, custody, and visitation." See Knaus v. York (1992), Ind. App., 586 N.E.2d 909, 911 (construing statute so as not to require support and visitation to be determined in one hearing).
Although the statutes provide for two avenues for custody determinations in a situation such as the one presented here, it does not follow that both the paternity court and the adoption court may exercise jurisdiction over the custody matters at the same time.
"It is well settled that two courts of concurrent jurisdiction cannot deal with the same subject matter at the same time. Once jurisdiction over the parties and the subject matter has been secured, it is retained to the exclusion of other courts of equal competence until the case is resolved, and the rule applies where the subject matter before the separate courts is the same, but the actions are in different forms. Exclusive jurisdiction over a particular cause of action vests when the complaint or other equivalent pleading or document is filed." (Citations omitted.)
Matter of Paternity of Fox (1987), Ind. App., 514 N.E.2d 638, 641. Here, the adoption court assumed jurisdiction over the custody determination first. The adoption court may not hold its jurisdiction temporarily and then unilaterally offer permanent jurisdiction to another court. The adoption courts' findings to the contrary are without effect.
Next, the prospective adoptive parents contend that the trial court erred by excluding them from the custody hearing, by finding that they were not parties, and by failing to conduct a hearing as to the best interests of the child. The court presumed that, once the adoption proceedings were dismissed, custody of the child must be with the natural mother, the natural father or both barring evidence of unfitness. Because the trial court did not conduct an evidentiary hearing on the best interests of the child, it apparently deduced from evidence at earlier hearings that neither the natural mother nor the natural father was unfit. Based upon the natural mother's contention that the child should remain in the custody of the prospective adoptive parents, the court did not award joint custody and instead awarded "temporary" custody to Vaughan.
The prospective adoptive parents acknowledge that natural parents enjoy a presumptively superior right to custody, but they urge that third parties have overcome the burden of demonstrating that the child's best interests lie with the third parties. In Turpen v. Turpen (1989), Ind. App., 537 N.E.2d 537, based upon a consideration of numerous previous decisions including those from the Indiana Supreme Court, this Court determined the proper standard to be employed by the trial court when a custody dispute involves a natural parent and third parties. Tracing the proper standard from the "seminal case of Duckworth v. Duckworth (1932), 203 Ind. 276, 179 N.E. 773," the paramount interest is that of the child. "[T]he welfare of the child may outweigh the legal rights of a parent even though [the parent] is a suitable person to have custody, where the real and permanent interests of the child demanded a different disposition." Id. at 538.
In Hunt v. Whalen (1991), Ind. App., 565 N.E.2d 1109, this Court again addressed the proper standard in determining custody disputes involving a natural parent and a third party. The decision acknowledged the presumption in favor of the natural parent:
"Claudette argues that the grandparents failed to show that she was an unfit parent, had acquiesced for a long period of time in their custody of David, or had *147 voluntarily relinquished custody of David to them such that David's and the Whalens' affections had become interwoven. She accurately contends that when a parent initiates an action to obtain custody, a nonparent seeking to retain custody must bear the burden of overcoming the parent's presumptively superior right to custody.
The grandparents ... urge rejection of a `mechanical approach' to custody disputes involving parents and [nonparents]. They propose consideration of the evidence under the rationale of Turpen v. Turpen. ... The Turpen court departed from prior decisions in parent/non-parent custody disputes which strictly limited consideration to three factors, i.e., unfitness of the natural parent, long acquiescence in another's custody or voluntary relinquishment resulting in interwoven affections. Judge Robertson defined the appropriate inquiry as whether there existed evidence supporting the trial court's determination that the presumption favoring the natural parent had been sufficiently rebutted." (Citations omitted.)
Id. at 1110-1111. Hence, the courts of this state must conduct an evidentiary hearing considering the best interests of the child prior to making a custody determination even where the traditional three factors of unfitness, acquiescence and relinquishment are inapplicable. The adoption court erred in failing to conduct such a hearing.
Further, it is noteworthy that in the earlier decision by this Court remanding the cause to the adoption court, it was specifically noted that a hearing on the best interests of the child should be conducted. "The `law of the case' doctrine designates that an appellate court's determination of a legal issue is binding on both the trial court and the Court of Appeals in any subsequent appeal given the same case and substantially the same facts."

Cha v. Warnick (1985), Ind., 476 N.E.2d 109, 114, rehg. den., cert. den. 474 U.S. 920 [106 S.Ct. 249, 88 L.Ed.2d 257];

see also Horine v. Greencastle Production Credit Ass'n (1987), Ind. App., 505 N.E.2d 802, 804 (law of case doctrine provides that appellate court's determination binding on both the trial court on remand and appellate court on subsequent appeal).
The adoption court erred in failing to hold an evidentiary hearing on the best interests of the child as instructed upon remand.
Because the court improperly determined that custody must be awarded to one of the natural parents in the present case, it also misguidedly found that the prospective adoptive parents were not parties to the custody hearing. As noted by the natural mother's attorney at the hearing, the enforcement of any custody order would be highly impractical where the persons with physical custody of the child were not parties to the proceeding. "To acquire real party in interest status, a person must have a present and substantial interest in the relief sought."

Brenner v. Powers (1992), Ind. App., 584 N.E.2d 569, 573, (Citation omitted.);

see also Ind. Trial Rule 17(A)-(C) (real parties in interest and parties to maintain actions for infants); and
Ind. Trial Rule 20(A)(1)-(2) (permissive joinder rule allowing persons to join as plaintiffs or defendants where relief affects them).
Here, the prospective adoptive parents, who had actual physical custody of the child at the time of the hearing, were properly parties to the custody proceedings.
The cause is remanded with instructions to grant an evidentiary hearing regarding the best interests of the child prior to a permanent custody determination, at which the prospective adoptive parents shall be parties.
Affirmed in part and reversed in part with instructions.
STATON and SHIELDS, JJ., concur in result.