Eldon L. MUTCHMAN, et al., Class Representative, Valada Sloan, et al., Sub–Class Representative, Appellants–Defendants/Counterclaimants,

v.

CONSOLIDATION COAL CO., Adele Wasson, et al., Appellees–Plaintiffs/Counterclaim Defendants.

No. 26A01–9504–CV–123.

Court of Appeals of Indiana.

June 14, 1996.

Rehearing Denied Aug. 23, 1996.

Thomas H. Bryan, Fine & Hatfield, Evansville, Ronald L. Polston, Raymond, Illinois, Virginia Compton Carmody, Saint Louis, Missouri, for Appellants.

Richard B. Steedman, Evansville, Theodore Lockyear, Evansville, for Appellees.

## OPINION

BAKER, Judge.

Appellant-defendant/counterclaimant Valada Sloan, as Sub–Class Representative, appeals the judgment of the Gibson Circuit Court in favor of appellees-plaintiffs/counterclaim defendants Consolidation Coal Company, Adele Wasson, et al. Specifically, Sloan argues that the trial court erred in finding that coal severance deeds, which granted title to "all the coal" underlying land owned by Sloan and sub-class members, included title to the portion of the coal which could only be recovered by surface mining methods.

### FACTS

In this appeal, we revisit longstanding litigation regarding veins of coal located in Gibson County, Indiana. The facts underlying this dispute are that in 1943, Gibson County acquired severed coal estates through a tax sale and subsequently conveyed the severed estates to Garry O. Hendrickson and James R. Wasson. The severed coal estate owners or their successors leased the title to the coal to Consolidation Coal Co. in the 1970's (here-

inafter appellees Adele Wasson, et al. and Consolidation Coal Co. will collectively be referred to as Consolidation). In 1982, Consolidation filed an action against all of the prior owners of the severed coal estates to quiet title to the coal.[1] In response, one of the surface owners, Eldon L. Mutchman, filed a motion to intervene in the quiet title action and to be designated as class representative on behalf of the owners of the surface estates. Mutchman was certified as class representative of the nine claims that had been filed, all of which generally concerned ownership of the surface coal and enforcement of the surface rights of the surface owners.

Between 1986 and 1988, the parties each filed motions for partial summary judgment. Following oral argument, the trial court granted Consolidation's motion for partial summary judgment and quieted Consolidation's title to all of the coal. Additionally, the trial court determined that a portion of Mutchman's claims, specifically those dealing with the surface owners' rights to the surface, were not ripe as no coal mining had begun or was imminent. In response, Mutchman filed a motion to correct errors contesting the trial court's grant of partial summary judgment in favor of Consolidation. On April 6, 1989, the trial court granted Mutchman's motion to correct errors and set aside its partial summary judgment decree.

Thereafter, Consolidation filed an appeal with this court seeking to have the trial court's grant of partial summary judgment reinstated. *See Consolidation Coal Co. v. Mutchman,* 565 N.E.2d 1074 (Ind.Ct.App. 1990), *rehearing denied* 589 N.E.2d 1163, *trans. denied.* After considering the various coal severance deeds, we held that the majority of the deeds were unambiguous and acted to convey title to all of the coal, including the surface coal. However, we also held that those deeds which granted title to "all of the coal" underlying the surface, yet contained provisions restricting the grantees' use of the surface, were ambiguous as to whether the grantors intended to grant title to the surface coal. With respect to these deeds, we

---

1. Title to the coal which could be mined by deep mining methods was previously resolved. The only title at issue in this appeal involves that portion of the coal which could only be mined by surface methods (surface coal).

remanded to the trial court for the parties to present extrinsic evidence to aid in the construction of these provisions. Additionally, we held that the grant of coal carries with it, as a necessary incident, the right to use such means and processes as are reasonably necessary to mine and remove the coal.

On remand, the trial court first determined, pursuant to this court's decision in *Consolidation*, which deeds were unambiguous and which were ambiguous and in need of construction. Thereafter, Mutchman and Consolidation reached a tentative agreement regarding the ambiguous deeds. As a result of this tentative agreement, Sloan sought to be certified as representative of the sub-class of surface owners who wished to proceed to trial. However, after Sloan was certified as the sub-class representative, the tentative agreement between Mutchman and Consolidation did not materialize. As a result, a trial was held on March 28–31, 1994, at which Mutchman, Sloan and Consolidation all presented evidence. Thereafter, on April 26, 1995, the trial court entered findings of fact and conclusions of law in which it determined that of the twenty-three deeds it found to be ambiguous, twenty deeds transferred ownership of all of the coal, including the surface coal, to the grantees and three deeds reserved ownership of the surface coal to the surface owners. Record at 64–67. Further, the trial court specifically determined that all of the deeds affecting the sub-class were ambiguous and interpreted the deeds as conveying title to the surface coal. R. at 67–68.

On April 12, 1995, Mutchman and Sloan initiated an appeal of the trial court's judgment. Thereafter, on July 6, 1995, the parties held a pre-appeal conference. As a result of this conference, Mutchman and Consolidation reached a settlement which was approved by the trial court and Mutchman dismissed his appeal. Mutchman, therefore, is not a party to this appeal, which now concerns only the coal severance deeds applicable to Sloan and the sub-class.

## DISCUSSION AND DECISION

### I. Res Judicata

■ Initially, we must address an issue raised by Sloan regarding whether our previ-

ous decision in *Consolidation* operates, pursuant to the doctrine of res judicata or the law of the case, to limit the issues in the current proceedings. According to Sloan, our prior decision concerned solely the title to the surface coal. Because we determined that certain deeds were unambiguous and others were ambiguous, yet, did not specifically delineate which deeds fell within each category, Sloan argues that we did not enter a final judgment and, as a result, that res judicata does not operate to prevent her pursuit of any issues with regard to the deeds. Further, Sloan argues that a second issue, the implied surface rights of mineral owners, was not properly before this court in *Consolidation* and our findings with respect to that issue, therefore, were merely dicta.

■ The doctrines of res judicata and law of the case both operate to preclude litigation regarding matters which have already been litigated. *Galloway v. State*, 485 N.E.2d 637, 639 (Ind.Ct.App.1985). Specifically, the doctrine of res judicata provides that a judgment on the merits is an absolute bar to a subsequent action between the same parties on the same claim. *Sullivan v. American Casualty Co.*, 605 N.E.2d 134, 137 (Ind.1992). Similarly, under the law of the case doctrine, an appellate court's determination of a legal issue is binding on the trial court on remand, and on an appellate court on subsequent appeal, if it involves the same case and substantially the same facts. *Horine v. Greencastle Production Credit Ass'n*, 505 N.E.2d 802, 804 (Ind.Ct.App.1987), *trans. denied.*

■ In *Consolidation*, we held that two sets of deeds, specifically those which expressly precluded the use of the surface and those which required immediate payment of damages for injury to crops, were ambiguous regarding the title that they conveyed in the coal and we remanded for the trial court to accept extrinsic evidence to aid in the construction of these provisions. The remainder of the deeds we held were unambiguous and conveyed title to all of the coal, including the surface coal. Thus, despite our failure to specifically delineate by number which deeds we found were ambiguous and unambiguous,

we did in fact render a final judgment on the merits regarding the title that was conveyed by those deeds which we held were unambiguous. Subsequent litigation regarding these deeds, therefore, is prohibited by the doctrine of res judicata. *Sullivan*, 605 N.E.2d at 137. However, res judicata does not bar subsequent litigation regarding those deeds which we determined were ambiguous as to the title that was conveyed to the surface coal, which includes all of the deeds affecting the sub-class.

■ Additionally, Sloan argues that res judicata and the law of the case do not apply to preclude additional litigation regarding the implied right to surface mine in Indiana because our holding on that issue was unnecessary to our resolution of the case and, thus, was merely dicta. Appellant's Brief at 13. In arriving at our decision that the majority of the deeds were unambiguous and granted title to all of the coal including the surface coal, we held that, in Indiana, coal owners have an implied right to access their coal through the surface. *Consolidation*, 565 N.E.2d at 1083. This holding, contrary to Sloan's argument, is not dicta; rather, it sets forth a principle which is necessarily incident to our finding that the deeds granted title to the surface coal. Without this principle, our holding would have been meaningless, because the coal owners would have held title to unaccessible coal. As such, Sloan's argument that the issue before this court in the prior appeal was limited to ownership, and not the right to surface mine, is a distinction without a difference, as ownership of surface coal necessarily includes the right to access that coal. As a result, Sloan cannot now relitigate this issue.

## II. Deed Construction

### A. Standard of Review

■ In the instant case, the trial court entered extensive and articulate findings of fact and conclusions of law at Sloan's request. R. at 1966. When the trial court makes requested findings of fact and conclusions of law under Ind.Trial Rule 52(A), we must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Bd. of Comm'rs v. Rittenhouse*, 575 N.E.2d 663, 666 (Ind.Ct.App. 1991), *trans. denied*. In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only if it is clearly erroneous, and a judgment is clearly erroneous only when it is unsupported by the findings of fact and conclusions of law entered on those findings. *Id.* To determine whether the findings or the judgment are clearly erroneous, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom; we will not reweigh the evidence or assess witness credibility. *Id.*

### B. Ownership of the Coal

■ Sloan argues that the evidence was insufficient to support the trial court's findings and conclusions with respect to the grantors' intention to transfer ownership of the surface coal. Pursuant to our instructions in *Consolidation*, the trial court on remand considered each of the deeds which were ambiguous as to the grantors' intent and determined that all of the deeds except three transferred ownership of the surface coal. Although the trial court made findings with respect to all of the deeds, in our review of the trial court's determinations, we need only consider those findings and conclusions which apply to the sub-class deeds.

In its findings of fact, the trial court found, pursuant to our instructions on remand, that all of the sub-class' deeds were ambiguous and, thus, were subject to interpretation regarding the grantors' intent. R. at 68. Specifically, it found that the deeds transferred "all the coal," yet contained "language providing for damages to crops for drilling for coal and for payment of additional money for rights of ingress and egress for coal purposes." R. at 68. In interpreting this language, the trial court examined extrinsic evidence which showed: during the time the deeds were executed, coal mining was an actively growing industry; strip mining methods were being used in the counties surrounding Gibson County; and it was most

likely the grantors of the coal deeds were aware of the probability that their coal was being acquired for strip mining. R. at 63. Additionally, the trial court found on the basis of newspaper articles and other publications that the grantors would have been aware of the widespread solicitation of land for strip mining purposes. R. at 63. As a result, the trial court found that although the deeds contained limitations and provisions for damage to the surface of the land, none of the extrinsic evidence demonstrated that the provisions regarding damages were intended to restrict the conveyance of title to "all the coal." R. at 66. Instead, the court found that the damage provisions merely applied to the methodology of extracting the coal, and not its ownership. R. at 68. On the basis of these findings, the trial court concluded that the sub-class' deeds conveyed all of the coal, including the surface coal, but that the coal owners were required to compensate the surface owners for damages to the surface occasioned by their mining activities. R. at 69.

According to Sloan, the evidence presented at trial did not support the trial court's findings that the grantors intended to convey the surface coal. Instead, Sloan argues that the evidence supported the opposite conclusion. Specifically, Sloan directs this court to evidence showing that no surface mines were in operation in Gibson County at the time the current deeds were executed, R. at 3345, 3397, the amount the grantees paid for each acre was less than that which they would have paid had the conveyance included the right to strip mine, R. at 3394–95, 3577, 4074–76, the grantors, who retained the surface rights, built new houses on the surface after the coal was transferred, R. at 3156, 4171, 4211, and the general practice at the time when strip mining was contemplated was to convey the entire fee and not just the severed coal. R. at 5002, 5153. Finally, Sloan argues that the sub-class' deeds, which limit the grantees' rights to use a limited number of surface acres for mining purposes, demonstrate clearly the grantors' intent to preclude the use of the surface for strip mining purposes. Appellant's Brief at 32.

While the evidence presented by Sloan is compelling, we find the evidence presented by Consolidation, and relied on by the trial court, is equally compelling. Specifically, Consolidation presented the testimony of two persons who were engaged in the acquisition of coal rights, and two persons who had accumulated historical evidence regarding coal mining, during the time the instant deeds were executed. These witnesses all testified regarding the prevalence of strip mining and the knowledge available about strip mining at that time. R. at 4438–40, 4935–37, 5052–55. Further, Consolidation presented numerous newspaper articles concerning coal mining from the 1920's which demonstrated the growth of the strip mining industry, including the growth in the area surrounding Gibson County. R. at 4793–4806, 4807–89, 4893–4920, 4925–33. From this evidence, we cannot say that it was unreasonable for the trial court to conclude that the grantors had knowledge that the surface coal could be removed by strip mining methods and, if the grantors did not want their land strip mined, they could have clearly limited the use of the surface to preclude strip mining. On the basis of the parties' conflicting evidence, we cannot say that trial court's findings and conclusions, that the grantors' conveyance of title to "all the coal" included the surface coal, were clearly erroneous. Because our standard of review precludes us from reweighing the evidence in Sloan's favor, we decline her invitation.

## III. Conclusion

In sum, we find that our previous decision, *Consolidation Coal Co. v. Mutchman*, 565 N.E.2d 1074, is res judicata with respect to those deeds which this court determined to be unambiguous, specifically, those deeds which did not contain language expressly precluding the use of the surface or requiring immediate payment for damages for injury to crops. Further, our holding in *Consolidation* that the grant of title to the surface coal impliedly includes the right to mine that coal is also res judicata and we reject Sloan's attempts to relitigate this issue.

With respect to the sub-class' deeds, which the trial court determined were ambiguous and subject to interpretation, we find that the evidence presented at trial and relied on by the trial court supports its findings, conclusions and judgment. Although Sloan presents this court with evidence in support of a different conclusion, our standard precludes us from reweighing the evidence.

Judgment affirmed.

ROBERTSON and HOFFMAN, JJ., concur.