**Karen SCHENK, Appellant
(Respondent Below),**

v.

**Richard L. SCHENK, Appellee
(Petitioner Below).**

**No. 82A01–8912–CV–516.**

Court of Appeals of Indiana,
First District.

Jan. 17, 1991.

Rehearing Denied Feb. 26, 1991.

Jeffrey L. Lantz, Evansville, for appellant.

Wm. C. Welborn, Evansville, for appellee.

ROBERTSON, Judge.

Karen S. Schenk appeals the modification of the child custody order in the decree that dissolved her marriage to Richard L. Schenk. The trial court modified the custody order by awarding Richard custody of the parties' three daughters. Karen raises six issues which we restate and consolidate into three, none of which constitute reversible error. Therefore, we affirm.

## FACTS

Karen and Richard were married on August 10, 1974. The petition for dissolution was filed November 7, 1985. Three daughters were born to this marriage, A.S. (born July 17, 1976), M.S. (born January 30, 1980), and T.S. (born December 31, 1981). Karen was awarded custody of the three girls.

In approximately November of 1986, Larry Hampton, Karen's boyfriend and business partner, moved into Karen's home. From March to September of 1987, Hampton sexually molested the two older girls.

In September of 1987—immediately after Hampton was accused of the molestations—the three girls were taken into protective custody pursuant to a CHINS petition.[1] At these proceedings, the father (Richard) requested that he be given custody of the girls. The mother (Karen) testified at the CHINS hearing that she would never have anything more to do with

---

1. CHINS is an acronym that stands for a "child in need of services" as defined by IND.CODE 31–6–4–3. A child molesting victim is a "CHINS" under I.C. 31–6–4–3(a)(3). A CHINS may be taken into protective custody pursuant to I.C. 31–6–4–6. A CHINS proceeding is filed in the juvenile court and is concerned with the detention, disposition, and case plan for a child in need of services effected and implemented by the Department of Public Welfare. I.C. 31–6–4.

Hampton and that she would sever both her business and personal relationships with him. The Juvenile Referee placed the children with the mother and ordered that the children have no contact with Hampton.

Karen purchased Hampton's share of the advertising business in which they were partners. Hampton moved in with his parents in Kentucky. However, Karen has continuously remained in contact with Hampton and has continued to employ him in their business as a contract worker, sending him various projects to accomplish. On the weekends that Richard had visitation with his daughters, Karen traveled to Kentucky to visit Hampton. Eventually, Karen resumed a romantic relationship with Hampton.

In December of 1988, Hampton was convicted of molesting the two oldest girls. He was sentenced to six years in prison (one year executed with work release and five years suspended with probation). The conditions of probation prohibited Hampton from having any contact with the victims except under therapeutic circumstances and surroundings (joint counseling sessions).

Karen's and Hampton's business was and is known as Schenk–Hampton Advertising, Inc. At the time of the modification hearing, Hampton was the Creative Director and Vice–President of Schenk–Hampton Advertising, Inc. Hampton was expected to be released from prison shortly and Karen and Hampton had circulated a flyer or letter to their clients informing them that Hampton would soon be back at the office. Karen testified at trial that she intended to marry Hampton as soon as his work release was over—which was to take place when he was released from prison within the year.

The modification hearing consumed six days. Based on the evidence, the trial court found:

that the father has demonstrated substantial and material changes in the circumstances so significant and continuing as to make the former order of custody herein unreasonable. And the Court further finds that the best interests of the

children of the parties, and each of said children, would be served by granting the father's Petition to Modify and placing the care, custody and control of the parties' children in the father, Richard L. Schenk. The Court further finds that the changes in circumstances include, but are not limited to the following: Larry Hampton, the boyfriend of the mother Karen molested two of the children; Karen has resumed her relationship with Larry Hampton personally and professionally; Karen and Larry intend to resume living together as soon as possible in the home purchased and owned jointly by them. (R.p. 124).

The trial court granted Karen reasonable visitation with the girls but placed the following restriction upon the visitation:

Under no circumstances shall the mother permit the children to be in the presence of [Larry Hampton] or have any contact with him except upon prior specific permission of this Court. Said contact, if approved in the future by this Court, shall be in the presence of a therapist or counselor pursuant to Court approved and monitored therapy sessions. (R.p. 125).

## DECISION

### I.

*Whether the trial court erred by basing its decision to modify the custody order on circumstances that had not yet taken place?*

 Karen asserts that Hampton may or may not move back in with her and the children. She argues the trial court's modification was erroneously premature. We disagree.

IND.CODE 31–1–11.5–22(d) governs custody modification. It reads:

The court in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable. In making its determination, the court shall not hear evidence on mat-

ters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances.

■■■ Our review of a trial court's decision regarding a child custody modification is limited to determining whether the trial court abused its discretion in applying the applicable statutory guidelines. *Smith v. Dawson* (1982), Ind.App., 431 N.E.2d 850. On appeal from a modification of a child custody order, we will not judge the credibility of the witnesses or substitute our judgment for that of the trial court. *Barnett v. Barnett* (1983), Ind.App., 447 N.E.2d 1172. In determining whether the trial court abused its discretion in modifying a child custody order, we consider only that evidence which supports the trial court's decision. *Smith, supra*. In reviewing the trial court's determination of custody rights, we will only reverse upon a showing of a manifest abuse of the trial court's discretion and such abuse will not be found unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable and actual deductions to be drawn therefrom. *K.B. v. S.B.* (1981), Ind.App., 415 N.E.2d 749. Upon an affirmative finding by the trial court that a change in circumstances has been so substantial and continuing as to make the existing child custody order unreasonable, the function of the reviewing court is merely to determine whether there was substantial probative evidence supportive of that conclusion and, if so, it cannot be said that the trial judge abused his or her discretion. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885.

■■■ In an action to modify a custody order, the noncustodial parent seeking custody has the burden of establishing that the original or existing custody order should be modified due to a substantial and continuing change in circumstances. *Pribush v. Roy* (1983), Ind.App., 456 N.E.2d 747. In a modification hearing, the trial judge must consider the evidence with the best interests of the child or children uppermost in his or her mind as the para-

mount concern. *Id.* With regard to a decision to modify a child custody order, the trial court must determine that the changed circumstances warranting modification must be of a decisive nature and such changed circumstances will support a modification order only if such order is necessary for the welfare of the child or children involved, thereby conclusively establishing that the existing custody order is unreasonable. *Id.* A modification of custody is warranted only when the petitioner shows a decisive change in conditions in the custodial home, or a change in the treatment of the children in the custodial home which necessitates removal. *Gerber v. Gerber* (1985), Ind.App., 476 N.E.2d 531. In any custody determination, the overlying concern of the courts is with the best interests of the children involved; however, whenever one party seeks a modification of an existing custody determination, only a strict showing that the present arrangement is unreasonable will suffice to justify a change in custody because of the potentially disruptive influence upon the child or children. *Moutaw v. Moutaw* (1981), Ind.App., 420 N.E.2d 1294.

■■■ The noncustodial parent must show something more than isolated acts of misconduct by the custodial parent to warrant a modification of child custody order; the noncustodial parent must show that changed circumstances regarding the custodial parent's stability and the child's wellbeing are substantial and continuing. *Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110 *trans. denied.* In *Pea*, we held that a divorced mother's co-habitation with a man was not sufficient in itself to justify an order transferring custody of the child from the divorced mother to the divorced father absent any showing that the cohabitation had an adverse effect upon the child. *Id.* A custodial parent cohabiting with another may be deprived of custody of the child only upon a showing that the parent's cohabitation has an adverse effect upon the welfare of the child. *Id.*

■■■ The law in the present case may be compared to the law applicable to the proceedings to terminate the parent-child rela-

tionship in certain respects. In the present case, the trial court's decision to modify the custodial arrangement could be supported by a decisive change in conditions in the custodial home, or a change in the treatment of the children in the custodial home which necessitates removal. *Gerber, supra.* In order to effect the termination of the parent-child relationship, the State must show that the children's situation while in the custody of the parents is wholly inadequate for their very survival. *J.K.C. v. Fountain County Dept. of Public Welfare* (1984), Ind.App., 470 N.E.2d 88.

▮▮▮▮▮ Also, in the context of a proceeding to terminate the parent-child relationship, the trial court should judge a parent's fitness to care for her children as of the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* Further, the court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the children. *Id.* The trial court need not wait until the children are irreversibly influenced by their deficient lifestyle such that their physical, mental and social growth is permanently impaired before terminating the parent-child relationship. *Id.*

The change in the circumstances cited by the trial court in its judgment in the present case is the resumption of the mother's romantic and business relationship with Hampton. This circumstance is not a future event, but one that existed at the time of the modification hearing. The event yet to take place is Karen's and Hampton's reunification after Hampton's release from prison.

As noted above, Karen testified that she intended to marry Hampton as soon as he finished serving his sentence for molesting the girls. The trial court found that Karen and Hampton intend to resume living together as soon as possible in the home purchased and owned jointly by them.

Under this set of circumstances, we do not believe that the father, Richard, was required to wait until the molester was released from jail and had moved back in with his daughters to institute modification proceedings. As noted above, in the context of parent-child termination proceedings the trial court need not wait until the children are irreversibly influenced by their deficient lifestyle such that their physical, mental and social growth is permanently impaired before terminating the parent-child relationship. *J.K.C., id.* Similarly, we do not believe the trial court needs to wait until the children are subjected in their home to the presence of one who has sexually molested them in the past before a modification can be effected.

In the present case, it is undisputed that Karen's cohabitation with Hampton, the child molester, has had an adverse effect upon the welfare of the children. The courts, since the time of the CHINS hearing, have—in effect—given Karen the choice concerning with whom she wishes to live—with her children or with her children's molester. The courts have refused to allow Karen to have her children and the child molester too. We believe the courts' imposition of this choice has been appropriate.

Karen has made her choice. She testified she intended to marry her children's molester as soon as possible. We hold this constitutes sufficient evidence to support the trial court's decision to modify the custody arrangement. Therefore, we find no abuse of the trial court's discretion.

## II.

*Whether the trial court erred in not issuing special findings of fact to support its ruling?*

Ind.Trial Rule 52(A) reads as follows in pertinent part:

Upon its own motion, or the *written* request of any party filed with the court *prior to the admission of evidence,* the court ... shall find the facts specially and state its conclusions thereon.

▮▮▮ In the present case, Karen's attorney made an oral motion for findings of fact after some evidence had been presented. Obviously, she failed to comply with T.R. 52 as set out above. Further, a modi-

fication of child custody is not one of the types of cases in which trial courts are required to make special findings of fact under T.R. 52.

In the present case, the trial court was not required to make special findings of fact. Therefore, we find no error.

### III.

*Whether the trial court erred by not appointing a guardian ad litem for the children?*

Karen never requested the court to appoint a guardian (or guardians) ad litem for the children in the present case. She admits the decision to appoint a guardian ad litem in a dissolution (or post-decree) proceeding is within the trial court's discretion. IND.CODE 31-1-11.5-28. Nevertheless, she asserts the trial court should have appointed a guardian ad litem in the present case and further asserts that trial courts should be mandated by law to appoint guardians ad litem in all contested custody matters.

Under the circumstances of the present case, we do not believe the trial court abused its discretion in failing to appoint a guardian or guardians ad litem. Nor do we believe we should—even if we could— amend I.C. 31-1-11.5-28 to require trial courts to appoint guardians ad litem in all contested custody matters. Therefore, we find no error.

Judgment affirmed.

RATLIFF, C.J., and SHIELDS, P.J., concur.