**Christopher Randall WARD, Appellant–Petitioner,**

v.

**Michelle Leann WARD, Gary McDivitt and Deborah McDivitt, Appellees–Respondents.**

No. 23A01–9206–CV–175.

Court of Appeals of Indiana, First District.

March 30, 1993.

Transfer Denied July 14, 1993.

Thomas J. Herr, Miriam E. Robeson, Truitt & Herr, Lafayette, for appellant-petitioner.

Susan D. Orr, Wallace Law Firm, Covington, for appellees-respondents.

BAKER, Judge.

Petitioner-appellant Christopher Randall Ward appeals the trial court's denial of his petition to modify custody of his son, Sean. The original custody order had been entered in Georgia when his marriage to respondent-appellee Michelle Leann Ward was dissolved. Christopher raises four issues for our review which we consolidate and restate as: whether the trial court erred when it concluded Christopher failed to show a substantial and continuing change in the circumstances of his son's custody.

### FACTS

Christopher and Michelle married on June 5, 1982, in Georgia. During the course of their marriage, they had two sons, Joshua, now age eight, and Sean, now age four. When the couple decided to live apart in June 1988, they sent Sean to live with his maternal aunt and uncle, the McDivitts, in Indiana. By March of 1989, Michelle had also moved into the McDivitts' home, and both Michelle and Sean were living there when the Wards entered a separation and custody agreement on August 14, 1989. A Georgia court accepted the Wards' agreements, and on September 12, 1989, entered judgment dissolving the Wards' marriage.

Pursuant to the custody agreement, Christopher was given custody of their older son, Joshua, and Michelle was given custody of their younger son, Sean. The agreement also reflected Sean's living arrangement with the McDivitts, and gave Michelle, as Sean's legal custodian, the right to determine his appropriate residence.[1] When the custody agreement was entered, Michelle was also living with the McDivitts. Just days after the marriage dissolution was final, however, Michelle returned to Georgia to "try to get back on [her] feet[,]" but she left Sean in Indiana with the McDivitts. *Record* at 110. Except for a six-month period in 1990 when Michelle returned to Indiana, Michelle has continued to reside in Georgia while Sean has resided in Indiana. Michelle is hopeful, however, that she will soon be able to introduce Sean back into her Georgia home.

On March 28, 1990, Christopher filed a petition to modify custody in the Juvenile Court of Gwinnett County, Georgia, but on August 23, 1990, the Georgia court dismissed the petition for lack of jurisdiction.

---

1. The McDivitts stipulated at the hearing that they have no legal claim or right to custody of Sean.

On December 18, 1991, Christopher petitioned the Fountain Circuit Court in Indiana to modify Sean's custody. After hearing evidence, the court denied Christopher's petition for modification. The court concluded Christopher failed to show a substantial change in circumstances (or any change in circumstances) sufficient to warrant modifying the custody order.

Christopher now appeals the denial.

## DISCUSSION AND DECISION

### Jurisdiction

■ We begin by noting this dispute encompasses modification of a custody order entered by a Georgia court. Because Sean was physically present in Indiana, and had been for over two years, the Georgia court declined jurisdiction to hear Christopher's modification petition. The Georgia court's dismissal was consistent with the policies of the Uniform Child Custody Jurisdiction Act, GA.CODE ANN. § 74–501, *et seq.*, to

assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available and to assure that the courts of [Georgia] decline the exercise of jurisdiction when the child and his family have a closer connection with another state.

GA.CODE ANN. § 74–502(a)(3). *See also* IND.CODE 31–1–11.6 *et seq.* Because the Georgia court declined to assume jurisdiction to modify a custody order it entered, and jurisdiction in the Circuit Court of Fountain County, Indiana, was otherwise proper, Indiana had jurisdiction to hear Christopher's petition to modify Sean's custody order. IND.CODE 31–1–11.6–14(a).

### Standard of Review[2]

■ When reviewing the denial of a petition for modification, this court will reverse the judgment only if the trial court abused its discretion. *Elbert v. Elbert* (1991), Ind.App., 579 N.E.2d 102, 105. When making our determination, we will not reweigh the evidence, reassess witness credibility, or substitute our judgment for that of the trial court. *Id.* If the trial court's judgment is supported by any evidence or legitimate inferences drawn therefrom, we will not disturb it. *Id.* If, however, the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, reversal is appropriate. *Id.*

Modification of custody orders is governed by IND.CODE 31–1–11.5–22(d) which provides:

The court in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable. In making this determination, the court shall not hear evidence on matters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances.

■ As the above provision mandates, a custody order may be modified only upon satisfying the following two-prong test.[3] First, the noncustodial parent must meet the strict burden of establishing the existence of a substantial and continuing change in the circumstances of the child's

---

**2.** The record reveals Michelle moved for dismissal after Christopher, the petitioner, presented his evidence. Technically, Michelle's motion was an Ind. Trial Rule 41(B) motion for involuntary dismissal with prejudice. In reality, however, a full-blown hearing had been conducted, and both Christopher and Michelle were afforded the opportunity to testify. Choosing substance over form, we will review the trial court's ruling as a denial of Christopher's petition for modification rather than as a dismissal with prejudice. *See Benefit Trust Life Ins. Co. v. Waggoner* (1985), Ind.App., 473 N.E.2d 646.

**3.** Notwithstanding Christopher's extensive argument to the contrary, we agree with the trial court that this is not a custody dispute between a natural parent and a third party. Rather, it is a dispute about the interpretation and modification of an existing custody order. The standard of proof applicable to a custody dispute between a natural parent and a third party enunciated in *Hendrickson v. Binkley* (1974), 161 Ind.App. 388, 316 N.E.2d 376, *cert. denied,* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98, simply does not apply.

custody. *Schenk v. Schenk* (1991), Ind. App., 564 N.E.2d 973, 977. If the court concludes a sufficient change in circumstances exists, the court must then determine whether the changed circumstances are of such a decisive nature that the existing custody order is unreasonable and modification is necessary for the child's welfare. *Id.* The decisive change in circumstances must be either in the custodial home or in the child's treatment in the custodial home. *Gerber v. Gerber* (1985), Ind.App., 476 N.E.2d 531, 532. The potentially disruptive influence upon a child passed between parents necessitates the strict showing of unreasonableness. *Moutaw v. Moutaw* (1981), Ind.App., 420 N.E.2d 1294, 1296.

### The Wards' Custody Agreement

Christopher seeks to modify Sean's custody order because Michelle has left Sean in Indiana while she lives in Georgia. Although he agreed Michelle would get custody of Sean, Christopher argues he did not agree Michelle and Sean could live apart.

The following provision in the parties' custody agreement is central to this dispute:

(1) Husband shall have custody of the older minor child of the parties, JOSHUA WAYNE WARD. Wife shall have custody of the minor child of the parties, CHRISTOPHER SEAN WARD. It is acknowledged by the parties in making this Agreement that the minor child, CHRISTOPHER SEAN WARD, is presently physically residing with his maternal aunt and uncle where and through whom he has been able to receive necessary and extraordinary medical and dental services. Husband acknowledges that the child's residence with his maternal aunt and uncle may be continuing for an unspecified period of time and that wife, as legal custodian of said child, shall determine the appropriate residence of said child.

*Record* at 31.

After hearing testimony from both Christopher and Michelle, the trial court denied Christopher's petition for modification for failure to demonstrate a substantial and continuing change in the circumstances of Sean's custody. The trial court concluded Sean's living arrangement with the McDivitts was exactly the same as it was when the custody order was entered. Specifically, the court made the following comments:

[T]he language [in the custody agreement] is clear. . . . Language couldn't be any clearer than that. . . . These folks determined what the best interest of the children were [sic] in 1989. . . . The circumstances are exactly the same today as they were when this agreement was signed in 1989. . . . [I]f I were sitting as the judge in Georgia I'm not sure I would have approved an agreement like this, but the judge in Georgia seemed to think it was the best thing and certainly the parents thought it was the best thing.

*Record* at 135–37.

We disagree with the trial court's assessment of the facts and interpretation of the Wards' custody agreement. The record reveals Michelle was living with Sean at the McDivitts' home when the Wards entered the custody agreement and when the Georgia court accepted it on September 12, 1989. Less than one month after the dissolution decree was entered, Michelle moved to Georgia but left Sean in Indiana. Except for a six-month period in 1990 when Michelle returned to Indiana, Michelle has continued to reside in Georgia while Sean resides in Indiana. It simply is not true, therefore, that "[t]he circumstances are exactly the same today as they were when this agreement was signed in 1989." *Record* at 136. Michelle and Sean no longer live in the same home; indeed, they do not live in the same state.

Furthermore, it is ambiguous, at best, whether the Wards' custody agreement permits Sean to remain with the McDivitts while Michelle lives permanently in Georgia. Christopher testified at the modification hearing that he understood the custody agreement required Michelle "either to stay with Sean in Indiana or . . . to bring Sean back to Georgia with her if she chose to move back to Georgia." *Record* at 58.

Michelle testified that she believed the agreement permitted her to determine the appropriate residence for Sean, and she had determined that that residence was with the McDivitts. *Record* at 107.

Pursuant to Michelle's interpretation, Christopher is bound by Michelle's decision concerning the best home for Sean regardless of whether she and Sean share the same home or whether Michelle exercises any responsibility for Sean's upbringing. When the Wards signed the custody agreement, we do not believe Christopher intended to relinquish the right to challenge the living arrangements Michelle chooses, especially when those arrangements involve Michelle living three states away from Sean. Furthermore, we find no evidence Christopher intended to give up the right to challenge Michelle's complete lack of responsibility for their child's upbringing. These, we believe, are the challenges Christopher makes today.

### Conclusion

Under the facts before us, the trial court erred when it concluded Christopher failed to show a substantial and continuing change in the circumstances of Sean's custody. Christopher satisfied the first prong of IND.CODE 31-1-11.5-22(d) when he showed Michelle moved to Georgia in the fall of 1989 while Sean has remained in Indiana. The trial court never reached the second prong of IND.CODE 31-1-11.5-22(d), however: whether the changed circumstances are of such a decisive and continuing nature that the existing custody order is unreasonable and modification is necessary for Sean's welfare. *See Schenk, supra,* at 977. This determination is properly for the trial court.

We reverse the denial of Christopher's petition for custody modification, and remand for proceedings consistent with this opinion.

ROBERTSON, J., concurs.

MILLER, J., dissents with separate opinion.

MILLER, Judge, dissenting.

The majority bases its reversal on a statement made by the trial court at the conclusion of the modification hearing in which he explained his reasons for denying the father's petition for modification. The majority cites the statement that the circumstances "are exactly the same as they were when this agreement was signed in 1989." The majority then correctly points out that things are not "exactly the same." However, after reading the record and the court's conclusion, I believe the majority has taken the judge's language out of context and the judge was correctly applying the standard that there had not been a vital, decisive change in conditions which affected the best interests of the child, the fitness of the mother, or the unreasonableness of the original custody order.

After hearing the evidence, the court made the following statement:

Well folks I have no idea what happened back in Georgia back in 1989, I don't have any idea what everybody assumed the agreement said, and what the court in Georgia approved, but the language is clear. "It is acknowledged by the parties in making this agreement the minor child Christopher Sean Ward is presently physically residing with his maternal aunt and uncle where and through whom he has been able to receive necessary and extraordinary medical and dental services. Husband acknowledges that the child's residence with his maternal aunt and uncle may be continuing for an unspecified period of time and that wife as legal custodian of said child shall determine the appropriate residence of said child." Language couldn't be clearer than that. *Hendrickson* case does not apply. This is not a fuss and I heard that at the beginning of this thing. It is not a fuss between maternal aunts and uncles and the natural father. It's a fuss between a natural mother and a natural father. The law in Indiana is clear, there isn't any question about it, and it's a good law. The reason we don't have judges being able to redetermine the best interests of the children. These folks determined what the best interest

of the children were in 1989 and the reason that you can't come back into court every thirty days or ninety days or two years and just have some other judge decide what is in the best interest of the children is so there's stability and things stay basically the same because the law says that the best thing for the children. And I don't think the legislature is wrong about that and it wouldn't make any difference if I thought so. The legislature has spoken and it says that a judge can only change custody of a child if and when there's a substantial change in conditions. There has been absolutely no (inaudible) of any evidence of any change. *The circumstances are exactly the same as they were when this agreement was signed in 1989.* And for me to find otherwise, is a, or for anybody to argue that seems to me really—no this is not debate. I gave you an opportunity to talk about what you wanted to talk about. That's the way I see it, that's the way I call it. The Motion, now I don't know if I can award fees in this case or not. If you can find, I really don't know. There was no prayer for fees and I don't know if there's any grounds for me to award fee in this case or not. But I, and I don't know that I will, but if you can— I'll take that matter of fees under advisement and give you the opportunity to submit something if you've got something. But there isn't any question there's no evidence here of any change in circumstances of any kind, let alone one that's substantial and continuing. I'm not saying, I'm not telling you the truth that if I were sitting as the judge in Georgia I'm not sure I would have approved an agreement like this, but the judge in Georgia seemed to think it was the best thing and certainly the parents thought it was the best thing. Anyway, that's the judgment of the court.

R. at 135–137.

As noted earlier, the majority is correct in its statement that changes have occurred. Father has remarried and no longer lives with his father, but with his new wife in their nice home. Mother initially moved from her aunt and uncle's home in Indiana to Georgia, returned to Indiana for a six month period, and then again went to Georgia where she is now working and engaged to be married, but still struggling with financial problems. All these changes were fully explored during the hearing (the facts do not seem to be in dispute).

After all, the purpose of this hearing was to litigate whether the changes justified a change of custody. But the majority insists that, when the judge said "[t]he circumstances are exactly the same," such language indicated that he was unaware of the obvious changes. I would find that, in context, the court was saying what this appellate court on review has said many times—that the party seeking a change in custody failed to meet his burden of showing, by a preponderance of the evidence, "changed circumstances so substantial and continuing as to make the existing custody order unreasonable." Ind.Code 31–1–11.5–22(d); *Elbert v. Elbert* (1991), Ind.App., 579 N.E.2d 102: *Pribush v. Roy* (1983), Ind. App., 456 N.E.2d 747; *Morrison v. Morrison* (1960), 130 Ind.App. 270, 164 N.E.2d 113.

There was evidence supporting the judge's decision and it was not, therefore, clearly erroneous. I would affirm.