Ranaye (Morgan) RICHARDSON, Appellant–Petitioner,

v.

Daniel G. MORGAN, Appellee–Respondent.

No. 48A05–9204–CV–126.

Court of Appeals of Indiana, Fifth District.

April 12, 1993.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, for appellant-petitioner.

Steven C. Smith, Patrick R. Ragains, Anderson, for appellee-respondent.

BARTEAU, Judge.

Ranaye Richardson and Daniel Morgan were divorced in 1988. At that time, the two agreed that they would have joint custody of their twin sons (now age 11), with Ranaye having primary physical custody. This agreement, as well as a very complicated visitation schedule, was made a part of the divorce decree. On March 20, 1991, Daniel sought modification of the original custody order, alleging "a substantial and continuing change of circumstance to warrant a modification of the Court's previous custody order." (R. 25). After hearing evidence and interviewing the twins *in camera,* the trial court granted Daniel's petition to change the children's primary residence, leaving the joint custody order intact. On appeal from this order, Ranaye argues that the evidence does not support a finding of changed circumstances to support the modification. She also argues that she was denied due process. We agree with Ranaye that the evidence does not support the trial court's decision and reverse. Because we reverse, we will not address Ranaye's due process argument.

FACTS

Ranaye is a special education teacher at a local school. She is married to a police officer with the Madison County Sheriff's Department. Ranaye, her second husband, her husband's nine year-old son from a previous marriage, and the twins live in the same home in which Ranaye and Daniel lived during their marriage—a three bedroom home on a two-acre lot off of Highway 9 in Anderson. Ranaye's work schedule is such that she arrives home when the boys do. Although she leaves before they do in the morning, her husband is at the house with the children. Her husband's schedule varies depending on the type of work he is doing at the time. In addition to his job with the sheriff's department, Ranaye's husband also does odd jobs. The boys attend church with their mother and step-father. Several witnesses testified that Ranaye was a fit mother and that her home was suitable for the children.

Daniel works at Inland Fisher Guide and his second wife is a legal secretary. They live in a two bedroom duplex in a rural area. By all accounts, this home is nice and adequate for the children. Daniel is very involved in the boys' upbringing and has coached the boys' sports teams.

The boys, Jarrell and Joseph, are both bright children who are described as mature for their age. Both parents describe the twins as being happy and seemingly well adjusted when they are with that particular parent. The boys do well academically and are very involved in sports. There is evidence that Daniel and Ranaye disagree on how to raise the children. Considerable testimony was elicited at trial regarding one incident in particular. Ranaye became upset when she saw Daniel, who was coaching the boys' basketball team, spank one of the boys in front of the team

members during practice. In response, Ranaye would not permit the twins to play on a basketball team which Daniel coached. Eventually, however, Ranaye agreed to their playing basketball on the week nights and weekends when they were with their father. (Under the original order, Daniel had custody of the boys two nights during the week in addition to every other weekend).

Dr. Kenneth Dimick acted as a moderator to help Ranaye and Daniel work out problems in the joint custody arrangement. He had agreed with Ranaye and Daniel that he would not testify in court as to which party he felt should have custody. He did, however, testify that he did not think it would be harmful for the children if Daniel were to have primary physical custody of the boys. He also testified that both boys had a strong desire to live with Daniel. Dr. Dimick testified that the boys' Intelligence Quotient test scores had dropped since the original custody order; however, there was no indication as to why this drop occurred. Further, Dr. Dimick testified that test scores will vary from one test to the next. There is no evidence that the boys had any discipline or behavior problems.

After hearing testimony from several witnesses and interviewing both boys *in camera,* the trial court entered the following order:

### ORDER

The Court having taken under advisement the Petition to Modify filed by Husband on March 20, 1991 and having heard evidence on said petition on July 18, 1991, October 30, 1991 and November 6, 1991 and having interviewed the minor children in chambers now finds that the Agreement entered by the parties and filed with the Court on April 7, 1988 should be modified to read as follows:

### CUSTODY AND VISITATION [1]

5. The children shall reside primarily with father.

6. Mother shall have all reasonable access to the children, which shall include no less than the following:

a) Alternate weekends from Friday at 3:30 p.m. until 8:00 p.m. on Sunday. However, mother shall transport the children on said weekends to any activities in which the children have been previously enrolled.

b) One week-day evening from the close of school until 8:30 p.m. when the children are not scheduled to participate in school related or athletic activities. Father shall advise mother no less than two weeks in advance of said activities so the week-day evening visitation can be scheduled.

8. In addition, during the period of time when the children are with father, he shall extend the mother the right to baby sit for the children when a sitter is required, taking into account the children's wishes and reasonable opportunities for relatives to have the children and spend time with them.

9. Father shall have the children for a period of four weeks immediately after the school year ends. The children shall then be with mother for four weeks. Father shall then have the children with him for the balance of the school summer vacation.

13. The prior Order that father pay support is hereby vacated. The Court was not provided with information concerning the current incomes of each party and will hold a hearing on this issue upon the filing of a praecipe by either party. Alternatively, the Court will consider the filing of stipulations by the parties concerning either their agreement concerning the amount of child support or stipulations of the respective incomes of the parties and a child support guideline calculation sheet from which the Court will rule without a hearing.

1. The numbering on this order is intended to correspond with numbered paragraphs in the divorce decree. The fact that the numbers are not consecutive should not be taken to mean that the order is in some way incomplete.

All remaining provisions of the Agreement entered by the parties on April 7, 1988 remain in full force and effect. (R. 42–3).

## DECISION

As in any other custody modification case, a parent seeking to change the primary residence of a child where a joint custody order is in place must show a change in circumstances so substantial and continuing as to make the original residential arrangement unreasonable. Ind.Code 31–1–11.5–22; *Lamb v. Wenning* (1992), Ind., 600 N.E.2d 96. As stated by our supreme court:

We conclude that the more stringent modification of custody standard should apply. The same concerns about stability and continuity present in sole custody modifications are present in the joint custody situation. One of the most significant elements of stability in the child's life is the child's primary caretaker—the person who cooks his meals, puts him to bed, and cares for him on a daily basis. It is certainly likely in joint custody arrangements that both parents are more involved in rearing a child. Still, when a child lives primarily with one parent under joint custody, a modification which sends a child to live with the other parent may have the same effect, as far as the child is concerned, as a traditional change in custody. Therefore, we hold that where there is joint legal custody with one parent providing the child's primary residence, a court may modify that residence only upon a showing of changed circumstances so substantial and continuing as to make the original residential arrangement unreasonable.

*Id.* at 98. It is not sufficient that a change in the custodial home has taken place: the petitioner must show that the change is of a decisive, substantial and continuing nature. *Simons v. Simons* (1991), Ind.App., 566 N.E.2d 551. Further, to prevail on a petition to modify custody, the non-custodial parent bears a heavy burden of overcoming the custodial parent's right to continued custody. *Id.; Elbert v. Elbert* (1991), Ind.App., 579 N.E.2d 102, 106.

Our review of the trial court's decision to modify custody is limited to determining whether the trial court abused its discretion in applying the applicable statutory guidelines. *Id.; Schenk v. Schenk* (1991), Ind.App., 564 N.E.2d 973, 977, *reh'g denied*. We will not reweigh the evidence nor judge the credibility of witnesses and we may only consider that evidence which supports the trial court's determination. *Id.* We will reverse a modification decision if there has been a manifest abuse of the trial court's discretion. *Simons*, 566 N.E.2d at 554. An abuse of discretion occurs if the petitioner fails to allege and prove a decisive change in conditions and there are no findings by the trial court of such changes. *Id.*

Such an abuse of discretion occurred here. Although Daniel alleged in his modification petition that there had been a substantial change in circumstances, he made no allegations as to what those changes were. Further, he failed to prove at trial that there have been such changes. The only real change found in Ranaye's life is that she has remarried and there is another boy living in the house. This, standing alone, is not sufficient to show a decisive change in circumstances.

Daniel argues in his brief that Ranaye has "created an atmosphere in the boys home where their contact with father, one of the things they most desire is minimized and thwarted at every turn." Appellee's Br. 10. This allegation is not supported by the evidence. Admittedly, Ranaye did not want the boys to play on the basketball team that Daniel coached. She testified that she was opposed to Daniel coaching the boys after she saw Daniel spank one of the boys at practice. Whatever her reasons, she did propose a compromise which was accepted by Daniel. There is no evidence that Ranaye interfered with any of Daniel's scheduled visits. Further, there is no evidence that Ranaye tried to undermine Daniel in front of the boys.

Daniel also places much stock in the boys' expressed desire to live with him. However, absent evidence that the existing

custody order is unreasonable, a child's wishes will not support a modification of custody. *Id.*

In summary, we find that the trial court abused its discretion by modifying the 1988 child custody order and reverse.[2] Because we reverse the modification, we need not address Ranaye's argument that she was denied procedural due process.

REVERSED.

RUCKER, J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. The majority opinion correctly applies the law as it was interpreted in *Lamb v. Wenning* (1992), Ind., 600 N.E.2d 96, Debruler, J., dissenting (majority determined that modification of joint custody obtained through "substantial and continuing change" standard). However, an issue which has not been addressed by the legislature or our Supreme Court is whether joint custody can remain viable once contested modifications arise after the initial determination that joint custody is in the best interests of the children.

In the present case, the parties initially agreed to joint custody with primary physical custody residing with Richardson. The dissolution court awarded joint custody as requested by the parties. The preciseness with which the custody and visitation schedules were set out appears telling with regard to the parties' ability to cooperate in matters concerning the children. Even after the January 15, 1992 order modifying custody, the parties continued to file petitions based upon differing interpretations of the visitation order and an unwillingness on the part of the father to comply with the order.

One of the statutory factors to be considered prior to an award of joint legal custody is: "whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare." IND.CODE § 31–1–11.5–21(g) (1984 Supp.). Although this requirement is not explicitly elevated to paramount stature within Indiana's joint custody provisions, some jurisdictions have so provided. *See e.g. Petrashek v. Petrashek* (1989), 232 Neb. 212, 440 N.W.2d 220 (joint custody not favored, only awarded in rare circumstance where parents possess great ability to cooperate); *Dunham v. Dunham* (1989), Okla. App., 777 P.2d 403 (cardinal criterion is agreement by parties along with ability to cooperate to reach shared decisions; thus, parties' opposition to joint custody is antithesis of joint custody concept); *Trolf v. Trolf* (1987), 126 App.Div.2d 544, 510 N.Y.S.2d 666, app. diss. 69 N.Y.2d 1038 (joint custody not favored and such order must be reversed where record demonstrates animosity and inability to cooperate).

Here, the parties did not object to joint custody. However, the highly contested nature of the modification proceedings and the parties' continued inability to amicably abide by a detailed visitation schedule portends future behavior inconsistent with joint custody. The mere necessity for such a detailed visitation schedule reflects a low level of concerted effort between the parties.

I continue to believe that the divisive nature of dissolution and custody proceedings requires the utmost caution prior to an award of joint custody. The statutory con-

**2.** We recognize in *Lamb v. Wenning* (1992), Ind., 600 N.E.2d 96, an opinion handed down after the trial court's order in this case, the supreme court remanded the custody modification to the trial court "for evaluation of the evidence according to the change in custody standard...." *Id.* at 99. In *Lamb*, the trial court judge stated at the hearing that he was going to modify custody because it would be in the best interest of the children. In the written order, however, he stated that there had been a change of circumstances to warrant the modification, but did not state what those circumstances were. The petitioner had not alleged changed circumstances in his petition. Unsure which standard the trial court employed, the supreme court remanded for clarification.

Here, however, Daniel did allege a change in circumstances. Further, there is no indication that the court used the "best interest" standard, as was the case in *Lamb*.

siderations attempt to insure that joint custody will not be awarded unless some spirit of cooperation between the parties concerning the children is readily apparent. Once joint custody has been awarded, the parties must be able to *maintain* that spirit of cooperation.

Filing contested modification proceedings should dissolve a joint custody award and return the parties and the custody matters to *status quo ante,* requiring a custody determination under the best interests standard. There is no such thing as unilateral cooperation. When at least one party does not wish to proceed with the joint custody arrangement and has been unable or unwilling to amicably alter the arrangement, the spirit of cooperation necessary for the children to thrive in a joint custody arrangement has been destroyed. To allow such an award to stand does not serve the interests of the children but merely placates the desire of both parties to have custody. Thus, the filing of a contested modification proceeding should require a hearing to determine the best interests of the children as in any initial custody proceeding.

To the extent that *Lamb, supra,* 600 N.E.2d at 98, could be read as a barrier to an assessment of custody based upon the best interests of the child after a joint custody award is dissolved, I would urge the Supreme Court to revisit this aspect of the custody formula. As noted by the majority in *Lamb,* "[o]ne of the most significant elements of stability in a child's life is the child's primary caretaker...." *Id.* The substantial and continuing change standard is primarily suited to curb the role of the judiciary and limit the court's discretion to alter custody once established. It does not, however, comport with the reality of the destabilizing qualities inherent in joint custody.

The terms "joint" or "shared" custody are legal fictions in that the parties' dissolution effectively prohibits them from simultaneously sharing custody. For those parties who wish to split physical custody, the children are bounced to and fro without stability. When physical custody lies with one party, the everyday decisions are, for the sake of stability and practicality, left to that party. Any major decisions which the parties should share are exactly of the type which cause turmoil straining familial relationships in the most congenial families. Such decisions would appear to be beyond the scope of the relationship of parties who chose to resolve their differences through divorce.

Therefore, I would vote to remand the cause for a hearing to determine the best interests of the children and for an award of sole custody based upon such evidence.