P.J. (Mace) WINDERLICH,
Appellant–Petitioner,

v.

S.K. MACE, Appellee–Respondent.

No. 67A05–9210–CV–362.

Court of Appeals of Indiana,
Fifth District.

July 15, 1993.

Rehearing Denied Aug. 26, 1993.

David D. Haynes, Terre Haute, for appellant-petitioner.

Cameron F. Clark, Clark Quinn Moses & Clark, Indianapolis, for appellee-respondent.

SHARPNACK, Chief Judge.

Polly Jean Winderlich appeals the trial court's granting to Steven Keith Mace, her former husband, of his petition to modify custody of their two sons, Nathan, now thirteen years old, and Keith, now eleven. We reverse.

Polly presents two issues for our review, which we consolidate and restate as whether the trial court abused its discretion when it found that Steven had shown changed circumstances so substantial and continuing as to make the existing custody order unreasonable. For the reasons set forth below, we find that the trial court's findings did not meet this standard.

Polly was granted a dissolution of her marriage to Steven on July 13, 1988. At a hearing on the issues of custody and support held on that date, Polly requested sole custody and Steven requested joint custody of Nathan and Keith. Both parties testified that the boys had expressed a preference to live with Steven. The parties agreed, nonetheless, that the boys' principal residence should be with Polly. On July 20, 1988, the court awarded sole custody of the two children to Polly.

One year later, Polly moved with Nathan and Keith from Greencastle, which was near Steven's residence, to Evansville, approximately 100 miles away. In June, 1990, Polly married Rudy Winderlich and moved with the boys into the Winderlich household, which also included Rudy's two minor sons and, for a time, Rudy's step-son from a previous marriage. On August 17, 1990, Steven filed a request for hearing on change of custody, pro se, which was overruled. On April 4, 1991, Steven, represented by counsel, filed a petition to modify, requesting custody of the children. Polly petitioned to have the cause transferred to her county of residence, but the petition was denied, and a hearing was ultimately held in circuit court in Putnam County on April 7, 1992. After the hearing, the court adopted the findings of fact and conclusions of law submitted by Steven, and judgment was entered on June 11, 1992.

The findings of fact relevant to the issue of changed circumstances are the following:

"4. That since the previous custody order, the petitioner has resided in three different locations and lives more than 100 miles from her residence at the time of decree."

\* \* \* \* \* \*

7. That the petitioner has been employed since the divorce decree, however, she is now voluntarily unemployed and is attending classes at the University of Southern Indiana....

\* \* \* \* \* \*

10. That counsel for the respective parties have offered as evidence certain stipulated exhibits, including a psychological evaluation for custody purposes prepared by Debra E. Taylor–McGee, Ed.D., psychologist, Cummins Mental Health Center, Inc. 308 Medic Way, Greencastle, Indiana 46135. That the evaluator makes no recommendation about who is the more fit parent.

11. That both Nathan Mace and Keith Mace, the minor children of the parties, testified that they preferred to live with their father, the respondent.

12. That Nathan Mace testified that the school he attended in Evansville, Indiana is "rough" and that he has been physically threatened at that school. That Nathan Mace testified

that his study habits were impaired because of these physical threats by other students and because of the negative school environment.

13. That Nathan Mace testified that his step-father favors his own children who reside in the home with he [sic] and his brother.

14. That Nathan Mace testified that the home in which he presently lives is too small and is overcrowded for the six persons living in that home.

15. That Rudy Winderlich, the petitioner's present husband, testified that he and the petitioner are looking for another place to live because the present living conditions are too crowded.

16. That both Nathan Mace and Keith Mace testified that there is not sufficient outside space around their present home to play. Both testified that they prefer living in a rural setting where there is more outdoor activities such as is offered at their father's home.

17. That most of the relatives of the petitioner and respondent live near the respondent's home in Parke County, Indiana, and that it would be of benefit for the children to live in Parke County to interact with their relatives.

18. That the children will attend a school in Parke County having a smaller teacher-student ratio providing for more individual attention than is offered at the present schools in Evansville, Indiana."

(Record, p. 70–72.) In its conclusions of law, the court stated "there is evidence of a decisive and substantial change in circumstances which affects the welfare of the children so as to render the existing custody order unreasonable." (Record, p. 72.)

■ Our review of the trial court's decision to modify custody is limited to determining whether the trial court abused its discretion in applying the applicable statutory guidelines. *Elbert v. Elbert* (1991), Ind.App., 579 N.E.2d 102, 106. We will not reweigh the evidence nor judge the credibility of witnesses and we may only consider that evidence which supports the trial court's determination. *Id.* We will reverse a modification decision if there has been a manifest abuse of the trial court's discretion. *Simons v. Simons* (1991), Ind. App., 566 N.E.2d 551, 554.

■ Under Ind.Code § 31–1–11.5–22(d), in an action to modify a custody order, the noncustodial parent seeking custody has the burden of establishing

"changed circumstances so substantial and continuing as to make the existing custody order unreasonable. In making its determination, the court shall not hear evidence on matters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances."

I.C. § 31–1–11.5–22(d). In a modification hearing, the trial judge must consider the evidence with the best interests of the child or children as the paramount concern. *Simons*, 566 N.E.2d at 554. To warrant modification of an existing order, the changed circumstances must be of a decisive nature and the modification must be necessary for the welfare of the child or children involved, or there must have been a change in the treatment of the children in the custodial home which necessitates removal. *Gerber v. Gerber* (1985), Ind.App., 476 N.E.2d 531, 532. Only a strict showing that the present arrangement is unreasonable will suffice to justify a change in custody because of the potentially disruptive influence upon the child or children. *Moutaw v. Moutaw* (1981), Ind.App., 420 N.E.2d 1294, 1296.

■ Indiana courts have found sufficient grounds for modification of custody where continuing the existing custody order would be detrimental to a child's welfare; modification of custody has not been used as a means for the courts merely to effect an improvement in a child's standard of living. A change of custody was thus properly granted where a custodial parent left the child in the care of relatives and moved to another state (*Ward v. Ward* (1993), Ind.App., 611 N.E.2d 167, 170); where a custodial parent had become an alcoholic, was abusive to the children, and encouraged them to use alcohol (*Thompson*

v. *Thompson* (1990), Ind.App., 550 N.E.2d 1332, 1334); where the custodial parent's boyfriend was convicted of sexually molesting the children and the parent intended to marry the molester (*Schenk v. Schenk* (1991), Ind.App., 564 N.E.2d 973, 978); where the custodial parent's mental illness significantly worsened (*Owen v. Owen* (1990), Ind., 563 N.E.2d 605, 609, *reh. denied*); and where there was substantial evidence that the custodial parent had neglected the children's day-to-day needs (*In re Davis* (1982), Ind.App., 441 N.E.2d 719, 721). A change of custody cannot be granted on the basis of a child's preference to live with the noncustodial parent, absent evidence that the existing custody order is unreasonable (*Richardson v. Morgan* (1993), Ind.App., 612 N.E.2d 157, 161; *Elbert*, 579 N.E.2d at 107); on the basis of an improvement in the noncustodial parent's lifestyle (*Drake v. Washburn* (1991), Ind. App., 567 N.E.2d 1188, 1190, *trans. denied*, Ind., 579 N.E.2d 31); on the basis of the noncustodial parent's remarriage (*Lucht v. Lucht* (1990), Ind.App., 555 N.E.2d 833, 838, *trans. denied*); on the basis of the custodial parent's unmarried cohabitation (*Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110, 113, *reh. denied, trans. denied*); on the basis of a move by the custodial parent making visitation inconvenient (*Lubeznick v. Liddy* (1985), Ind.App., 477 N.E.2d 947, 952, *reh. denied, trans. denied*); or on the sole basis of a custodial parent's move out of state (*Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 890). The common standard underlying these decisions is a strict one: the circumstances in question must be of such a decisive nature as to make the change of custody *necessary* for the welfare of the child. *Dunlap v. Dunlap* (1985), Ind.App., 475 N.E.2d 723, 725, citing *Huston v. Huston* (1971), 256 Ind. 110, 267 N.E.2d 170.

■ As noted above, we review the evidence in the light most favorable to the trial court's decision. In doing so, we look at the trial court's findings of fact to determine whether the court's decision is "clearly against the logic and effect of the facts and circumstances" before it. *Thompson*, 550 N.E.2d at 1335.

■ We find the evidence presented to the trial court to be insufficient to warrant a modification of custody. The findings of fact, taken individually and collectively, fail to meet the standard of circumstances creating the requisite necessity of a change of custody for the welfare of Nathan and Keith.

■ The fact that Polly lived in three different locations in the four years between the divorce and the modification hearing (finding # 4) is not evidence of detriment to the children's welfare in her custody. A reasonable frequency of changes of residence cannot by itself be regarded as detrimental; in extreme cases, as in *In re Davis, supra,* where the custodial parent and children had no permanent home, the frequency of changes of residence may rise to the level where detriment to the children is evident. We consider that three residences (meaning two moves) within four years hardly qualifies as unreasonable. Nor is the fact that Polly moved 100 miles from her former residence (finding # 4) a significant factor; as the parties testified, visitation had continued as before the move. Moves of far greater distance by a custodial parent have been held not to constitute sufficient grounds for a custody change. *See Lamb v. Wenning* (1992), Ind., 600 N.E.2d 96, 98 (a move out-of-state is not per se a substantial change of circumstances warranting change of custody; it is within the court's discretion to consider whether the effect of such a move requires a change of custody); *see also Poret, supra,* and *Lubeznick, supra.* The fact that most of the children's relatives live near Steven (finding # 17) is an inconvenience which does not make a change of custody necessary for the boys' welfare.

The testimony of Nathan and Keith that they preferred to live with Steven (finding # 11) is not a changed circumstance; at the 1988 hearing both parents testified to the boys' preferences to live with their father. Nor is the fact that the children will attend a school with a smaller student-teacher ratio if they live with Steven (finding # 18) a

changed circumstance; it is a possible result of a change of custody. Nathan's testimony as to the "rough" atmosphere in the Evansville school he attends (finding # 12), the favoritism of his step-father, Rudy, toward his natural children (finding # 13), the overcrowded conditions in the Winderlich household (finding # 14), and Nathan and Keith's testimony as to the lack of outside space at their present home (finding # 16) are all legitimate causes for parental concern and intervention. There is nothing in the record to suggest, however, that Polly has failed to deal responsibly with her sons' education or with the expected problems of bringing step-children together as a family. The fact that Rudy testified that he and Polly had put their present house, which he acknowledged was too crowded, on the market and were hoping to move to a larger place (finding # 15) is not evidence of a changed circumstance to the boys' detriment; on the contrary, it demonstrates a concern for the children's happiness and well-being. Similarly, the fact that Polly has stopped working to become a college student (finding # 7) is a potentially positive change; it evidences a desire for self-improvement and may provide a positive example for Nathan and Keith.

 The fact that the psychologist made no recommendation as to who was the more fit parent (finding # 10) is not a changed circumstance. An examination of the psychologist's report in light of the testimony of the parties and their children reveals that both Polly and Steven are caring, responsible parents who have their sons' best interests at heart. It is equally clear that the sons love both their parents and feel torn between them. Although Steven emphasizes the boys' desire to live with him, the report indicates that this desire has complex psychological roots and elements of ambivalence. Moreover, absent evidence that the existing custody order is unreasonable, a child's wishes will not support a modification of custody. *Richardson*, 612 N.E.2d at 161.

There is no indication that the July 20, 1988 custody order was unreasonable or had become unreasonable or that the changed circumstances since that order were of such a decisive nature as to make modification of the order necessary for the welfare of Nathan and Keith. Nor do we find that there has been a change in the treatment of the children in the custodial home which necessitates removal.

We find that the trial court abused its discretion in modifying the 1988 custody order and reverse.

Reversed.

SHIELDS and RUCKER, JJ., concur.