**In re the MARRIAGE OF Ranaye (Morgan) RICHARDSON, Appellant,**

**and**

**Daniel G. Morgan, Appellee.**

**No. 48S05–9310–CV–1179.**

Supreme Court of Indiana.

Oct. 27, 1993.

David W. Stone IV, Stone Law Office & Legal Research, Ronald L. McNabney, Anderson, for appellant.

Steven C. Smith, Patrick R. Ragains, Steven C. Smith, A Professional Corp., Anderson, for appellee.

On Petition To Transfer

DICKSON, Justice.

In this child custody modification case, the issue is whether the trial court's determination should be overturned on appeal as an abuse of discretion. Our preference for granting latitude and deference to our trial judges in family law matters is here confronted by a claim of inadequate proof of changed circumstances.

When the parties' marriage was dissolved in 1988, the agreed order provided for joint custody of twin eight-year-old

boys, with the mother providing their primary residence. Three years later, the father sought modification of the custody order. The trial court conducted an extensive hearing and entered an order that preserved joint legal custody but ordered that the children should henceforth reside primarily with the father, with corresponding changes in the visitation arrangements and support obligations of the parties. The Court of Appeals reversed, finding that the trial court abused its discretion. *Richardson v. Morgan* (1993), Ind.App., 612 N.E.2d 157.

■ Where there is joint legal custody with one parent providing a child's primary residence, a trial court may modify that residence "only upon a showing of changed circumstances so substantial and continuing as to make the original residential arrangement unreasonable." *Lamb v. Wenning* (1992), Ind., 600 N.E.2d 96, 98.

> To determine that an existing custody order is "unreasonable," a trial court is not required to find that the present custodian is unfit or that the existing order is harmful to the welfare of the child. This determination may include all relevant factors, including changes in circumstances of both the custodial and noncustodial parents and the resulting and potential advantages and disadvantages to the child. The change in conditions must be judged in the context of the whole environment.

*Id.* at 99.

■ In a custody modification matter, the standard used by a trial court and that used on appellate review are not the same. *Burrington v. Howard* (1988), Ind.App., 521 N.E.2d 371, 372. The trial judge is entrusted with the responsibility for determining whether there has been a change in circumstances so substantial and continuing as to make the existing order unreason-

able. *Id.* In the appellate review of such determinations, as in other cases tried by a court without a jury, the judgment should not be set aside "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind.Trial Rule 52(A). The applicable standard of review is well settled:

> We do not weigh the evidence nor judge the credibility of witnesses, but rather consider only that evidence most favorable to the judgment, together with reasonable inferences which can be drawn therefrom. If, from that viewpoint, there is substantial evidence to support the finding of the trial court, it will not be disturbed, even though we might have reached a different conclusion if we had been the triers of fact.

*Meehan v. Meehan* (1981), Ind., 425 N.E.2d 157, 161 (citations omitted). If there is any evidence or legitimate inferences to support the finding and judgment of the trial court, this Court will not intercede and use its judgment as a substitute for that of the trial court. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 887; *Marshall v. Reeves* (1974), 262 Ind. 107, 113, 311 N.E.2d 807, 811.

The trial court received three days of testimony from numerous witnesses including a clinical psychologist and a clinical social worker. The trial court also interviewed the boys in chambers.

■ Ranaye contends that there was no evidence of substantial change in circumstances.[1] Daniel argues that a substantial and continuing change in circumstances was shown primarily in the mother's conduct in discouraging or preventing the boys from participating in sports, especially those in which he was their coach. Ranaye perceived the boys to be under emotional

---

1. In her brief to the Court of Appeals, Ranaye also asserted that a trial court must either leave intact an initial joint custody arrangement or convert it to an award of sole custody. Judge Hoffman agrees. *Richardson,* 612 N.E.2d 157, 161 (Hoffman, J., dissenting) ("Filing contested modification proceedings should dissolve a joint custody award and return the parties and the custody matters to *status quo ante,* requiring a custody determination under the best interests standard"). This contention was rejected by implication in *Lamb,* 600 N.E.2d 96, with its articulation of a standard for the modification of physical custody without terminating joint legal custody.

stress and pressure under Daniel's coaching. She was displeased that the boys' athletic practice schedule resulted in their spending time with the father in excess of the visitation schedule incorporated in the dissolution decree. On occasions she prohibited the boys' attendance at games or practice on days other than regular visitation. As discord increased, she preferred to prohibit the boys from participating in basketball altogether, but eventually agreed to permit their involvement if Daniel were not their coach.

Daniel further defends the trial court determination by emphasizing the boys' preference to reside with him rather than with Ranaye. The psychologist consulted to facilitate and assist the parties with joint custody testified that the boys very strongly wanted to live with their father, primarily because of their interest in and desire to participate in athletics. Because the boys also had favored living with their father at the time of the parties' dissolution, such preference arguably, would not constitute any change in circumstances. In addition, the desire of a young child to live with one parent has been held to be insufficient standing alone to constitute a substantial and continuing change. *Elbert v. Elbert* (1991), Ind.App., 579 N.E.2d 102, 107. Here, however, the boys were almost twelve years old, and the passage of years was accompanied by the corollary growth and development of the boys' physical capabilities as well as advanced interests in athletic endeavors in common with the coaching activities and interests of their father, a joint custodial parent. The boys' preference was long-standing and thoroughly documented by the psychologist who had been consulting with the family. This combination of evidentiary facts may be considered in determining the issue of substantial and continuing change of circumstances.

Looking only to the evidence and all inferences favorable to the judgment, giving due regard to the opportunity of the trial judge to personally observe the witnesses, and refraining from the substitution of our view for that of the trial court, we find that the evidence is not so lacking as to render the trial court judgment clearly erroneous.

■ Ranaye's final contention is that she was denied due process of law by reason of letters from a testifying psychologist sent to the trial court following the conclusion of evidence. Ranaye argues that she was thereby unable to confront and cross-examine the psychologist and to present her own evidence in response.

At the conclusion of the final day of testimony on November 6, 1991, the trial judge indicated she would decide the case in the future, after interviewing the children and reviewing the evidence, exhibits, and arguments of counsel. Record at 835. On November 27, 1991, and December 20, 1991, the court received letters from Dr. Dimick, who had previously testified. Ranaye thereafter filed a "Report to the Court" responding to the letters. Record at 36–37. At the beginning of its order pronouncing judgment January 15, 1992, the trial court refers to having interviewed the children and having heard evidence on July 18, October 30, and November 6, 1991, but makes no mention of the subsequent letters as having been considered. Record at 42.

Other than the Court's mere receipt of the letters from Dr. Dimick, Ranaye fails to demonstrate that the content of the letters was actually included in the evidence considered by the trial court. Furthermore, at no time did she move to strike the letters or to reopen evidence, or otherwise present any contemporaneous objection. Finally, the content of the letters appears to have favored Ranaye. We decline to reverse on Ranaye's claim of denial of due process of law resulting from Dr. Dimick's letters sent to the trial court.

Transfer is granted. The judgment of the trial court is affirmed.

SHEPARD, C.J., and GIVAN and KRAHULIK, JJ., concur.

DeBRULER, J., concurs in result with opinion.

DeBRULER, Justice, concurring in result.

This case and *Lamb v. Wenning* (1992), Ind., 600 N.E.2d 96, involve the modification of an existing order granting joint legal custody. In *Lamb*, this Court concluded that the same legal standard should apply to both changing a residential arrangement within a joint custody order and changing custody from one parent to another. In the process of so concluding, this Court did state, as quoted in the majority opinion, that a change in circumstances of a noncustodial parent is a relevant factor to be considered in applying this standard. There is now a basis in these two cases for the induction that a change in circumstances of a non-custodial parent is a relevant factor in deciding whether to make a change of custody from a custodial parent to a noncustodial parent. With this induction I am at odds.

When a trial court grants custody to one parent, it necessarily concludes that a child will be provided that care which is necessary to its welfare. Ind.Code § 31.1–11.5–21. That care is too often humble, barely sufficient. The trial court nevertheless has confidence that such custody is in the best interests of the child. It should be plain, even to the novice ethicist, that after such a grant of custody, improvement in the circumstances of the non-custodial parent, as for example where a noncustodial parent recovers from alcohol and drug addiction and goes from rags to riches, is totally irrelevant to deciding whether a change of custody is in order. Our legal, moral, and ethical codes require a declaration of this irrelevance. The law should relegate such fortunate noncustodial parents to lifting the lives of their offspring without gaining legal custody. The opportunities for doing so are unlimited.