Daryl SCHULTZ, Appellant,

v.

FARM CREDIT SERVICES OF MID-AMERICA, ACA, and William Risner, Jr., Appellees.

No. 37A04–9710–CV–430.

Court of Appeals of Indiana.

March 11, 1998.

Daryl Schultz, Rensselaer, Pro Se.

John T. Casey, Blaney, Casey & Walton, Rensselaer, for Appellees.

## OPINION

SULLIVAN, Judge.

Appellant, Daryl Schultz (Schultz), appeals the trial court's order granting summary judgment in favor of the appellees, Farm Credit Services of Mid–America and William Risner, Jr. (collectively, FCS).

We affirm.

At the outset, we note that Schultz fails to make a cognizable argument in his brief upon appeal. His brief is devoid of any case law, does not contain a verbatim statement of the judgment nor does it contain an adequate statement of the facts [1] as required by Ind. Appellate Rule 8.3. FCS restates Schultz's issues and adds a claim for appellate attorney fees. Neither FCS nor this court has the responsibility to reformulate Schultz's argument. Therefore, we conclude that Schultz has waived the issues upon appeal. However, as will become apparent below, Schultz has demonstrated a remarkable penchant for attempting to relitigate issues that have long since been resolved. Considering this, we feel it appropriate to address the merits of Schultz's appeal, hopefully in order to put the litigation to final rest.

Schultz appeals the trial court's order of June 13, 1997. In that order, the trial court concluded that Schultz had no recognizable interest in certain real estate (the subject property). In reaching its decision, the trial

[1] The facts in this case are rather long and complicated, and Schultz's Statement of the Facts is nothing but a recitation of his issues. However, FCS provides a Statement of Facts in its brief, which Schultz does not contest in his reply brief. It is from FCS's brief and the various orders of the Jasper Circuit Court that we glean the facts in this case.

court noted that it previously concluded in a December 4, 1987 summary judgment order and decree of foreclosure that Daryl Schultz had no interest in the subject property.

> "The equity of redemption of the Defendants, A & M Farms, Inc., Albert Schultz, Martha Schultz, Daryl A. Schultz and Norita J. Schultz, and each of them, and all persons claiming from, under, by or through them, or any of them, in and to the [subject property], is hereby forever barred and foreclosed, and the [subject property], and all right, title, interest and claim of the Defendants, and each of them, and all persons claiming from, under, by or through them, except as provided herein, in and to the [subject property] shall be sold by the Sheriff of Jasper County, Indiana...."

Record at 172 (quoting Cause No. 37C01–8704–CP–109, Supp. Record at 71).[2] An appeal was taken in this case to this court; however, the appeal was dismissed pursuant to the appellee's motion. *Schultz v. Production Credit Assoc.*[3] No. 37A05–9107–CV–244 (March 4, 1992) Ind.App.[4]

One would think that the controversy with the subject property ended there, but subsequently, Schultz filed for bankruptcy protection, as did A & M Farms, Inc., an Indiana corporation of which Schultz's parents, Albert and Martha, were apparently the sole shareholders.[5] Seemingly due to the bankruptcy stay, the Sheriff's sale never occurred. In a Corporate Warranty Deed dated October 20, 1991 and recorded on August 20, 1993, A & M attempted to deed the subject property, notwithstanding the 1987 order which declared that it had no interest, to Schultz Manufacturing and Fabricating Co., Inc.—an Indiana corporation formed by Schultz. Schultz and/or Schultz Manufacturing recorded several documents purporting to reflect an interest in the subject property. Schultz was operating under the imaginative presumption that the various bankruptcies had somehow affected the foreclosure determination of 1987.

The Jasper Circuit Court, unmoved by Schultz's creative misapplication of the law, again ordered the Jasper County Sheriff to conduct a Sheriff's sale.[6] For some unexplained reason, the Sheriff's sale was not conducted until May 20, 1994, and the Sheriff executed a Sheriff's Deed to FCS on the same day. Again, one would assume that this would bring the controversy to an end.

Nonetheless, undaunted by the heretofore adverse rulings with regard to his claimed interest in the subject property, Schultz and/or his family refused to relinquish possession of the subject property. Schultz, along with his son Wade Schultz, filed a purported Writ of Redemption with the Jasper Circuit Court Clerk in 1995. On September 1, 1995, Judge Daugherty entered an order reiterating many of the facts above. He concluded that all of the various Schultz family filings were null and void and that:

> "A & M Farms, Inc., Albert Schultz, Martha Schultz, Daryl Schultz and Norita Schultz have no right, title, interest and/or possessory rights to the subject real estate and, additionally, no individual claiming through the aforementioned entities, including but not limited to, Wade Schultz, Cole Schultz and/or Reed Schultz, have

---

2. The record supplied by Schultz is lacking in nearly every document adverse to his position. However, FCS supplies us with a supplemental record in order to accurately reflect the various proceedings below.

3. The above-mentioned Production Credit Association is now known as FCS.

4. The appeal was initiated by the filing of a praecipe on July 18, 1991. Therefore, the appeal was not from the December 1987 order referenced herein. The appeal, as mentioned, was dismissed pursuant to a motion by the appellee. In that motion, the appellee demonstrated that the Schultzs' brief was, much like the brief before us, confusing, misleading, and not at all in conformity with the Rules of Appellate Procedure. Moreover, the appellee's motion asserts that the Schultzs were utilizing the appeal as a way to circumvent the fact that they had failed to appeal the December 1987 order—a pattern we see repeated here.

5. It appears that A & M was administratively dissolved in 1988.

6. On May 17, 1991, the United States Bankruptcy Court entered an order relieving FCS of the automatic stay in order to enforce its lien upon the subject property. The trial court's order of the Sheriff's sale was entered in June of 1991.

any right, title, interest and/or possessory rights to the subject real estate."

Record at 246. Judge Daugherty, tiring of the Schultzs' incessant litigation and following the lead of Judge Sharp in the United States District Court,[7] further ordered the Jasper County Clerk to direct any document or pleading of the Schultzs to his attention before accepting it for filing. This order was not appealed.

FCS finally attained control of the property and leased it to William Risner, Jr. The Schultz legal maneuvers resumed in an attempt to resurrect the concept that various Schultz entities had an interest in the subject property, and they filed a claim against FCS and Risner. This claim was dismissed by the Jasper Superior Court.

On June 17, 1996, FCS, in what it now considers as perhaps "a tactical error", filed suit against Schultz and his brother Darwin Schultz. It is from this action that the present appeal ensued. FCS's complaint describes certain items of personal property on the subject property that it assumed belonged to Schultz or his brother. FCS attempted to get the court to direct the Schultz family to remove the property and requested further injunctive relief to prevent Schultz from trespassing and further litigating the interest in the subject property.

FCS eventually dismissed its complaint but not before Schultz had the opportunity to file the usual barrage of assertions, now in the form of counterclaims. Again, Schultz asserted interest in the property, asked the court to set aside previous judgments, quiet title and award damages. FCS moved the trial court for summary judgment, and the trial court entered summary judgment in favor of FCS on June 13, 1997. Judge Daugherty noted that Schultz's claims were adjudicated in, among others, the 1987 and 1995 orders, which determined that Schultz, et al., had no interest in the subject property.

Res judicata, therefore, precluded Schultz from relitigating those issues. *Scott v. Scott* (1996) Ind.App., 668 N.E.2d 691.

■ The essence of Schultz's first issue, as we understand it, is that the court erred in basing its June 13, 1997 order upon the conclusions of the court's September 1, 1995 order. Schultz asserts that the latter order was an "unfinal" order because it did not resolve all of the issues as to all of the parties involved. Moreover, Schultz asserts, the trial court did not enter a determination that there was no just reason for delay and expressly enter a judgment in contravention of Ind. Trial Rule 54. Schultz feels that the trial court could not rely upon a previous order which was not a final order on the merits.

Schultz's argument that the September 1995 order is somehow not final is immaterial. We direct Schultz's attention to the date upon the order and remind him that, if he disagreed with the judgment therein, he had no longer than thirty days in which to file a praecipe to initiate an appeal from the 1995 order. Ind. Appellate Rule 2(A). It does not take a chronologist to determine that the time for an appeal of that order has long since passed. Also, the conclusion that res judicata prevents relitigation of the issues is equally and independently supported by the December 1987 order which is referenced in Judge Daugherty's present order. Schultz does not address that order. Therefore, his argument must fail.

Schultz's second argument is that the September 1995 order improperly disposed of the rights of Wade, Cole and Reed Schultz, who were not parties to that action. The myriad of responses to this argument is head-spinning. First, the 1995 order simply said that no one may claim an interest in the property through Daryl, et al., and listed the other three Schultzs as examples. It did

---

**7.** The Schultzs' bankruptcy proceedings, which the Seventh Circuit labeled "a vigorous campaign of litigation against all who crossed their paths," are inextricably tied with the present proceedings. *Schultz v. Diversified Financial Planners, Inc.* (1994) 7th Cir., 19 F.3d 22. In those proceedings, the Schultzs managed to test the patience of Chief Judge Allen Sharp, who after listing 18 cases of the Schultzs in his court and the fact that the Schultzs were merely trying to relitigate previous decisions, required that *any* future case filed by the Schultzs would be presumed frivolous until they prove to the court otherwise and post a $5000 bond to cover costs. *Schultz v. Demeter* No. 4:95cv10AS (March 16, 1995) N.D.Ind.

nothing to dispose of their individual rights because, with regard to the subject property, they had none. Second, if the order did dispose of some interest held by them, they also had no more than thirty days to appeal that order. Third, Daryl Schultz, as a pro se appellant, may only represent himself without engaging in the unauthorized practice of law. Finally, this is an appeal of the June 13, 1997 order—which had no effect upon any individual rights of the aforementioned three younger members of the Schultz clan.

Schultz next asserts that FCS failed to designate the trial court's September 1, 1995 order in support of its motion for summary judgment. Schultz simply failed to praecipe such designated materials, which FCS supplied in its supplemented record of the proceedings. Schultz's assertion is simply untrue, as the document is contained in the supplemental record of the proceedings at pages ten and eleven.

Schultz next cries foul because, he asserts, the trial court made inconsistent rulings.[8] In an August 10, 1995 order, the court refused Schultz's request to take judicial notice of his Exhibit I, an order entered in Cause No. 37C01–9104–CP–074, because a trial court may not take judicial notice of its records in a prior or separate case. *See State v. Peters* (1994) Ind.App., 637 N.E.2d 145. Schultz does not inform us of the "evidence" that was erroneously excluded, nor does he point out that the court's August 10, 1995 order was in Cause No. 37C01–8704–CP–109.[9] He claims that the trial court should have taken judicial notice of Schultz's proffered evidence, but again, this is not an appeal in that case. That case was completed and not appealed, and Schultz may not now assert trial court error present in that case.

What Schultz may assert is that the same trial court, although in two different cases, may not, to his detriment, use its discretion to rule inconsistently. What Schultz does not say in his brief, and what we are inferring, is that the trial court ruled inconsistent-ly by taking judicial notice of the 1995 and 1987 orders for res judicata purposes in this case. As above-mentioned, Schultz does not demonstrate the substance of his proposed exhibit nor its purpose. We can therefore only address whether the trial court erred in utilizing the 1995 and 1987 orders for res judicata purposes.

The law of res judicata is well-established in Indiana. It operates to "preclude litigation regarding matters which have already been litigated.... [A] judgment on the merits is an absolute bar to a subsequent action between the same parties on the same claim." *Mutchman v. Consolidation Coal Co.* (1996) Ind.App., 666 N.E.2d 461, 464, *trans. denied.* Judicial notice, however, deals with facts and relieves "the party having the burden of establishing a fact from the necessity of producing formal proof." *Hutchinson v. State* (1985) Ind., 477 N.E.2d 850, 854. Judicial notice has no bearing upon whether a party is precluded from bringing a claim or relitigating an issue. That determination is a matter of law. Because Schultz merely asserts that the trial court failed to take judicial notice of a particular proceeding, we see no inconsistency in the trial court's rulings.

Schultz's next argument goes to the heart of whether FCS properly had an interest in the subject property. That issue has been litigated and relitigated and relitigated, much to the dismay of the Jasper Circuit Court. Schultz may not again address this issue and neither shall we. He has no interest in the subject property.

Schultz next contends: "That pursuant to [I.C.] 32–8–19–1 and 32–8–19–2 cited above and pursuant to pages 130 to 135 of the Record, Farm Credit and Risner was [sic] as of February 1, 1990 estoped [sic] from taking any action against the Real Estate entitled to the Appellant Daryl Schultz." Appellant's Br. at 9. This is not a proper appellate argument. It is simply what Judge Sharp referred to as Schultz's propensity to "use

---

8. Schultz claims that the trial court made inconsistent rulings, but only draws our attention to one ruling of the trial court. In order for something to be inconsistent, it must be not consistent *with another fact or claim.*

9. This is the case which ended with the September 1, 1995 order.

legal 'buzz words' in a conclusory fashion." *Schultz v. Demeter* No. 4:95cv10AS (March 16, 1995) N.D.Ind. Again, Schultz's interest in the property has been and remains foreclosed.

So far as this court can ascertain, in Schultz's final argument he seems to claim that the Notice of Sheriff's Sale contained in the *Rensselaer Republican* was deficient— thereby rendering the Sheriff's sale illegal or somehow improper. Again, the question of whether the Sheriff's sale was properly conducted was at issue in Cause No. 37C01– 8704–CP–109, not the cause before us today. It is becoming more and more apparent that Schultz is attempting to appeal *that* cause rather than the one to which he is entitled an appeal. Further, the essence of Schultz's claim is that the notice of sale failed to include, as required by statute, a common description of the property. However, Schultz does not demonstrate, nor do we suspect he could, how he was prejudiced as a result of that omission. Had he appealed that issue in a timely fashion, he would have still met with failure.

 Finally, FCS, as could be expected, asks for this court to remand the cause to the Jasper Circuit Court to determine attorney's fees in connection with this frivolous appeal.[10] We do so without hesitation. The actions of Schultz stand as perhaps the paradigm of abuse of the legal process, and this court would be hard-pressed to conjure up a hypothetical case any more frivolous than this appeal. We therefore remand this cause to the trial court for the sole purpose of awarding attorney fees to FCS in an amount the trial court deems appropriate and reasonable.

The trial court's decision is affirmed, and we remand to the trial court in order to award attorney's fees to FCS.

FRIEDLANDER and KIRSCH, JJ., concur.

---

**10.** FCS also requests costs and expenses; however, Appellate Rule 15(H) provides that, because we affirm the judgment in whole, FCS shall recover costs.